Jenny L. Doling, Esq. (#207033)
Veronica E. Ruiz, Esq. (#335797)
**J. DOLING LAW, PC**
36-915 Cook Street, Suite 101
Palm Desert, CA 92211
(760)884-4444 – Phone
(760)341-3022 – Fax
jd@JDL.law

*Attorneys for Debtors/Plaintiffs*
*Maximiliano Sanchez*
*Rosa Sylvia Garcia*

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA – RIVERSIDE DIVISION**

| | |
|---|---|
| In re:<br><br>**MAXIMILIANO SANCHEZ, and ROSA SYLVIA GARCIA**<br><br>Debtors.<br><br>**MAXIMILIANO SANCHEZ, and ROSA SYLVIA GARCIA**<br><br>Plaintiffs,<br><br>v.<br><br>**DLJ MORTGAGE CAPITAL, INC.; SELECT PORTFOLIO SERVICING, INC.**<br><br>Defendants. | Case No.: 6:18-bk-17028-WJ<br><br>Adv. No:<br><br>Chapter: 13<br><br>**DEBTORS' COMPLAINT TO AVOID JUNIOR LIEN ON REAL PROPERTY (11 U.S.C. § 506(a) & (d); FRBP 3012); MEMORANDUM OF POINTS AND AUTHORITIES; WITH DECLARATIONS IN SUPPORT THEREOF**<br><br>**<u>Status Conference to be held on:</u>**<br>Date: TBD<br>Time: TBD<br>Ctrm: 304 |

**TO THE HONORABLE WAYNE E. JOHNSON, UNITED STATES BANKRUPTCY COURT JUDGE:**

NAME OF CREDITOR HOLDING JUNIOR LIEN (Defendants): DLJ MORTGAGE CAPITAL, INC; SELECT PORTFOLIO SERVICING, INC.

A. Introduction: This is an adversary proceeding brought by the Plaintiffs, MAXIMILIANO SANCHEZ and ROSA SYLVIA GARCIA ("Plaintiffs"), in order to determine the value of a claim secured by a lien on real property of the Plaintiffs which the estate has an interest, and has to avoid the junior deed of trust, mortgage, or other encumbrance (Lien) of

Defendant, DLJ MORTGAGE CAPITAL, INC.; SELECT PORTFOLIO SERVICING, INC. ("Defendants" or "DLJ MC; SPS") pursuant to 11 U.S.C. § 506.

B. Jurisdiction: This adversary proceeding arises out of and is related to the above-captioned Chapter 13 case now pending the United States Bankruptcy Court. The complaint involves a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2). The Court has jurisdiction in this adversary proceeding pursuant to 28 U.S.C. § 157, 1334, and General Order No. 266 of the United States District Court for the Central District of California.

C. Venue: Venue for this adversary proceeding is proper in this Court pursuant to 28 U.S.C. § 1409(a).

D. General Allegations:

1. Debtors' Chapter 13 case was filed on August 20, 2018.
2. A Chapter 13 plan was proposed, and a confirmation hearing was held on October 10, 2018, at which time the plan was confirmed. The Order Confirming Chapter 13 Plan was entered on October 10, 2018 as docket number 35.
3. The plan contemplated avoidance of a junior lien with DLJ MC; SPS. *A true and correct copy of the plan is attached hereto as **Exhibit A** and incorporated by reference.*
4. Debtors filed a valuation motion entitled Debtor's Notice of Motion and Motion to Avoid Junior Lien on Principal Residence [11 U.S.C. § 506(d)] on September 13, 2018 as docket number 26.
5. The Order Granting Valuation Motion ("Order") was entered on October 12, 2018 as docket number 39. *A true and correct copy of the Order is attached hereto as **Exhibit B** and incorporated by reference.*
6. A Proof of Claim ("POC") filed by DLJ Mortgage Capital, Inc.; Select Portfolio Servicing, Inc. was filed on October 23, 2018, as claim number 23. *A true and correct copy of the POC is attached hereto as **Exhibit C** and incorporated by reference.*

7. Debtors have complied with all requirements under the plan and have received a discharge on August 10, 2022 as docket number 92. *A true and correct copy of the discharge is attached hereto as **Exhibit D** and incorporated by reference.*

8. Debtors are now entitled to and request an order that the junior lien of DLJ MC; SPS recorded on August 1, 2007, document number 2007-0497808, in the Riverside County Recorder's Office be avoided and no longer enforceable. *A true and correct copy of the lien is attached hereto as **Exhibit E** and incorporated by reference.*

WHEREFORE, Debtors pray as follows:

1. That the Court make an unconditional order that the deed of trust executed by ROSA SYLVIA GARCIA, in favor of DLJ MORTGAGE CAPITAL, INC.; SELECT PORTFOLIO SERVICING, INC., is void and no longer enforceable and as to its successors in interest.
2. Such further relief as the court deems just.

Date: August 12, 2022

**J. DOLING LAW, PC**

By: /s/ Jenny L. Doling

Jenny L. Doling
Attorney for Defendants
MAXIMILIANO SANCHEZ and
ROSA SYLVIA GARCIA



**MEMORANDUM OF POINTS AND AUTHORITIES**

Applicable law provides that a Chapter 13 Debtor may avoid a junior lien on the Debtor's property under certain circumstances. Zimmer v. PSB Lending Corp. (In re Zimmer), 313 F.3d 1220, 1227 (9th Cir. 2002); Lam V. Investors Thrift (In re Lam), 211 B.R.36,41 (9th Cir. BAP 1997), appeal dismissed, 192 F3d 1309 (9th Cir. 1999); 11 U.S.C. § 506(a), (d).

**STATEMENT OF FACTS**

Plaintiffs own the real property at 78845 Villeta Drive, La Quinta, California 92253. The property is their residence. The first mortgage is currently held by HSBC Bank USA, National Association as Trustee for Ellington Loan Acquisition Trust 2007-2, Mortgage Pass-Through Certificates, Series 2007-2, by and through its servicing agent Nationstar Mortgage LLC d/b/a/ Mr. Cooper. The second mortgage which holds the lien sought to be avoided is held by DJL Mortgage Capital, Inc., by and through its serving agent Select Portfolio Servicing, Inc.

**CONCLUSION**

Based on the above, Debtors request that the Court make an unconditional order that the lien of DLJ MORTGAGE CAPITAL, INC.; SELECT PORTFOLIO SERVICING, INC. is void and no longer enforceable, and as to its successors in interest, and for such further relief as the Court deems just.

Date: August 12, 2022

**J. DOLING LAW, PC**

By: /s/ Jenny L. Doling
Jenny L. Doling
Attorney for Defendants
MAXIMILIANO SANCHEZ and
ROSA SYLVIA GARCIA

**DECLARATION OF JENNY L. DOLING**

I, JENNY L. DOLING, declare:

1. I am an individual over 18 years of age and competent to make this Declaration.
2. If called upon to do so, I could and would competently testify as to the facts set forth in this declaration.
3. The facts set forth below are true of my personal knowledge.
4. I am an attorney at law duly admitted to practice before this Court and all courts of the State of California. I am a California State Bar Certified Bankruptcy Specialist. I serve on the Board of Directors of the National Association of Consumer Bankruptcy Attorneys, as well as the San Diego Bankruptcy Forum Board of Directors. I am experienced in bankruptcy and very familiar with this case and the operations of my clients.
5. I am the attorney of record for MAXIMILIANO SANCHEZ and ROSA SYLVIA GARCIA ("Debtors" or "Plaintiffs").
6. I make this Declaration in support of Plaintiffs' Complaint to Avoid Junior Lien on Real Property.
7. Attached hereto as **Exhibit A** is a true and correct copy of the Chapter 13 plan filed in the instant case on August 20, 2018, as docket number 2.
8. Attached hereto as **Exhibit B** is a true and correct copy of the Order Granting Valuation Motion filed and entered on October 12, 2018, as docket number 39.
9. Attached hereto as **Exhibit C** is a true and correct copy of the Proof of Claim filed by DLJ Mortgage Capital, Inc.; Select Portfolio Servicing, Inc. on October 29, 2018, as claim number 23.
10. Attached hereto as **Exhibit D** is a true and correct copy of Debtors' discharge filed and entered on August 12, 2022, as docket number 92.
11. Attached hereto as **Exhibit E** is a true and correct copy of the recorded Deed of Trust lien.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 12th day of August 2022 at Palm Desert, California.

By: /s/ Jenny L. Doling
Jenny L. Doling

**DECLARATION OF ROSA SYLVIA GARCIA**

I, ROSA SYLVIA GARCIA, do hereby declare that all of the following is true and correct to the best of my personal knowledge and if called upon to testify, I could and would competently testify to the truthfulness of all statements contained herein.

1. I am the Joint Debtor in the instant bankruptcy proceeding, filed on August 20, 2018, and known as case number 6:18-bk-17028-WJ.
2. A Chapter 13 plan was proposed, and a confirmation hearing was held on October 10, 2018, at which time our plan was confirmed. The Order Confirming Chapter 13 Plan was entered on October 10, 2018, as docket number 35.
3. The plan contemplated avoidance of our junior lien with DLJ MORTGAGE CAPITAL, INC.; SELECT PORTFOLIO SERVICING, INC. ("DLJ MC; SPS").
4. A true and correct copy of the plan is attached hereto as **Exhibit A** and incorporated by reference.
5. A valuation motion entitled Debtor's Notice of Motion and Motion to Avoid Junior Lien on Principal Residence [11 U.S.C. § 506(d)] was filed on September 13, 2018, as docket number 26.
6. The Order Granting Valuation Motion ("Order") was entered on October 12, 2018, as docket number 39.
7. A true and correct copy of the Order is attached hereto as **Exhibit B** and incorporated by reference.
8. We have complied with all requirements under the plan and have received a discharge on August 10, 2022, as docket number 92.
9. A true and correct copy of our discharge is attached hereto as **Exhibit C** and incorporated by reference.
10. We are now entitled to and request an order that the junior lien of DLJ MC; SPS recorded on August 1, 2007, document number 2007-0497808, in the Riverside County Recorder's Office be avoided and no longer enforceable.

11. A true and correct copy of the lien is attached hereto as **Exhibit D** and incorporated by reference.

12. We respectfully request an unconditional order from the Court that the junior lien of DLJ MORTGAGE CAPITAL, INC.; SELECT PORTFOLIO SERVICING, INC. is void an unenforceable and as to its successors in interest.

I respectfully request that this Court vacate the Status Conference. Executed this 16th day of August 2022, under the penalty of perjury to laws of the United States of America, at Palm Desert, California.

Rosa S Garcia
ROSA SYLVIA GARCIA
Joint Debtor

Attorney or Party Name, Address, Telephone & FAX Numbers, State Bar Number & Email Address
Jenny L Doling/Summer M Shaw
DOLING SHAW & HANOVER, APC
36-915 Cook Street, Suite 101
Palm Desert, CA 92211
(760)341-8837 Fax: (760)341-3022
207033/283598 CA
jd@dshapc.com/ss@dshapc.com

☐ *Debtor appearing without attorney*
☑ *Attorney for Debtor*

FOR COURT USE ONLY

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

List all names (including trade names) used by Debtor within the last 8 years.
In re:

**Maximiliano Sanchez**
**FDBA Creations By G6**
**Rosa Sylvia Garcia**
**AKA Rosa Sylvia Garcia-Sanchez; AKA Rosa Sylvia Hernandez; AKA Rosa Sylvia Sanchez**

Debtor(s).

CASE NUMBER:

CHAPTER: 13

**CHAPTER 13 PLAN**

☑ Original
☐ 1st Amended*
☐ 2nd Amended*
☐ 3rd Amended*
☐ ______ Amended*

*list below which sections have been changed

______________________________

[FRBP 3015(b); LBR 3015-1]

**11 U.S.C. SECTION 341(a) CREDITORS' MEETING:**
**Date:**
**Time:**
**Address:**

**PLAN CONFIRMATION HEARING: [LBR 3015-1(d)]**
**Date:**
**Time:**
**Address:**

*"Bankruptcy Code" and "11 U.S.C." refer to the United States Bankruptcy Code, Title 11 of the United States Code. "FRBP" refers to the Federal Rules of Bankruptcy Procedure. "LBR" and "LBRs" refer to the Local Bankruptcy Rule(s) of this court.*

**Part 1: PRELIMINARY INFORMATION**

**TO DEBTOR (THE TERM "DEBTOR" INCLUDES AND REFERS TO BOTH SPOUSES AS DEBTORS IN A JOINT BANKRUPTCY CASE):** This Chapter 13 Plan (Plan) sets out options that may be appropriate in some cases, but the presence of an option in this Plan does not indicate that the option is appropriate, or permissible, in your situation. A Plan

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.
*December 2017* Page *1* **F3015-1.01.CHAPTER13.PLAN**

**EXHIBIT A (Page 1 of 14)**

Main Document Page 9 of 56
Case 6:18-bk-17028-WJ Doc 2 Filed 08/20/18 Entered 08/20/18 13:25:31 Desc
Main Document Page 2 of 14

that does not comply with local rules and judicial rulings may not be confirmable. You should read this Plan carefully and discuss it with your attorney if you have one. If you do not have an attorney, you may wish to consult one.

**TO ALL CREDITORS:** This Plan is proposed by Debtor and your rights may be affected by this Plan. Your claim may be reduced, modified, or eliminated. You should read this Plan carefully and discuss it with your attorney if you have one. If you do not have an attorney, you may wish to consult one.

If you oppose this Plan's treatment of your claim or any provision of this Plan, you or your attorney must file a written objection to confirmation of the Plan at least 14 days before the date set for the hearing on confirmation, unless otherwise ordered by the Bankruptcy Court. The Bankruptcy Court may confirm this plan without further notice if no objection to confirmation is filed. *See* FRBP 3015. In addition, you must file a timely proof of claim in order to be paid under any plan. *See* LBR 3015-1 and FRBP 3002(a).

Defaults will be cured using the interest rate set forth below in the Plan.

**The following matters may be of particular importance to you:**

***Debtor must check one box on each line to state whether or not this Plan includes each of the following items. If an item is checked as "Not Included," if both boxes are checked, or neither box is checked, the item will be ineffective if set out later as a provision in this Plan.***

**1.1 Valuation of property and avoidance of a lien on property of the bankruptcy estate, set out in Class 3.A. and/or Section IV (11 U.S.C. § 506(a) and (d)):**
☑ **Included** ☐ **Not included**

**1.2 Avoidance of a judicial lien or nonpossessory, nonpurchase-money security interest, set out in Section IV (11 U.S.C. § 522(f)):**
☐ **Included** ☑ **Not included**

**1.3 Less than full payment of a domestic support obligation that has been assigned to a governmental unit, pursuant to 11 U.S.C. §1322(a)(4). This provision requires that payments in Part 2 Section I.A. be for a term of 60 months:**
☐ **Included** ☑ **Not included**

**1.4 Other Nonstandard Plan provisions, set out in Section IV:**
☑ **Included** ☐ **Not included**

**ALL CREDITORS ARE REQUIRED TO FILE A PROOF OF CLAIM IN ORDER TO HAVE AN ALLOWED CLAIM, EXCEPT AS PROVIDED IN FRBP 3002(a).** Debtor, or Attorney for Debtor (if any), are solely responsible to object to a creditor's claim if Debtor deems it necessary. A Debtor whose Plan is confirmed may be eligible thereafter to receive a discharge of debts to the extent specified in 11 U.S.C. § 1328.

**Part 2: PLAN TERMS**

Debtor proposes the following Plan terms and makes the following declarations:

**Section I. PLAN PAYMENT AND LENGTH OF PLAN**

A. Monthly Plan Payments will begin 30 days from the date the bankruptcy petition was filed. If the payment due date falls on the 29th, 30th, or 31st day of the month, payment is due on the 1st day of the following month (LBR 3015-1(k)(1)(A)).

Payments by Debtor of:
$ 2,561.00 per month for months 1 through 60 totaling $ 153,660.00 .
For a total plan length of 60 months totaling $153,660.00.

B. Nonpriority unsecured claims.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.
December 2017 Page 2 F3015-1.01.CHAPTER13.PLAN

**EXHIBIT A (Page 2 of 14)**

1. After Class 1 through Class 4 creditors are paid, allowed nonpriority unsecured claims that are not separately classified (Class 5) will be paid *pro rata.* If more than one option is checked below, the option providing the largest payment will be effective. *Check all that apply.*

   a. ☐ **"Pot" plan:** The sum of $**81,720.29**

   b. ☑ **"Percentage" plan:** **69**% of the total amount of these claims, for an estimated payment of $**81,720.29**.

   c. ☑ **"Residual" plan:** The remaining funds after disbursements have been made to all other creditors provided for in this Plan, estimated to pay $**81,720.29** equivalent to **69**% of these claims.

2. Minimum Plan payments. Regardless of the options checked above, payments on allowed nonpriority unsecured claims will be made in at least the following amounts: (a) the sum of $**0.00**, representing the value of non-exempt assets that would have to be paid to nonpriority unsecured creditors if the bankruptcy estate of Debtor were liquidated under Chapter 7 (11 U.S.C. § 1325(a)(3)) and (b) if Debtor has above-median income and otherwise subject to 11 U.S.C. § 1325(b), the sum of $ **81,720.29** , representing all disposable income payable for 60 months.

C. Regular Plan payments to the Chapter 13 Trustee will be made from future income in the following manner: *Check all that apply.*
☐ Debtor will make Plan payments pursuant to a payroll deduction order.
☐ Debtor will make Plan payments directly to the Chapter 13 Trustee.
☐ Other (*specify method of payment*):.

D. Income tax refunds. Debtor will provide the Chapter 13 Trustee with a copy of each income tax return filed during the Plan term within 14 days of filing the return and, unless the Plan provides 100% payment to nonpriority unsecured creditors (Class 5), will turn over to the Chapter 13 Trustee all income tax refunds in excess of $500 received during the Plan term.

E. In the event that secured creditor(s) file a Notice of Postpetition Fees and Costs pursuant to FRBP 3002.1(c), the Chapter 13 Trustee is authorized, but not required, to commence paying those charges 90 days after that notice is filed, unless within that time the Debtor contests those charges by filing a motion to determine payment under FRBP 3002.1(e) or agrees to pay those charges by filing a motion to modify this Plan.

F. Debtor must make preconfirmation adequate protection payments for any creditor that holds an allowed claim secured by personal property where such security interest is attributable to the purchase of such property and preconfirmation payments on leases of personal property whose allowed claim is impaired by the terms proposed in this Plan. Debtor must make preconfirmation adequate protection payments and preconfirmation lease payments to the Chapter 13 Trustee for the following creditor(s) in the following amounts:

| Creditor/Lessor Name | Collateral Description | Last 4 Digits of Account # | Amount |
|---|---|---|---|
| -NONE- | | | |

Each adequate protection payment or preconfirmation lease payment will accrue beginning the 30th day from the date of filing of the case. The Chapter 13 Trustee must deduct the foregoing adequate protection payment(s) and/or preconfirmation lease payment from Debtor's Plan Payment and disburse the adequate protection payment or preconfirmation lease payment to the secured creditor(s) at the next available disbursement or as soon as practicable after the payment is received and posted to the Chapter 13 Trustee's account. The Chapter 13 Trustee will collect his or her statutory fee on all receipts made for preconfirmation adequate protection payments or preconfirmation lease payments.

G. Debtor must not incur debt greater than $1,000 without prior court approval unless the debt is incurred in the ordinary course of business pursuant to 11 U.S.C. §1304(b) or for medical emergencies.

H. The Chapter 13 Trustee is authorized to disburse funds after the date the Plan confirmation is announced in open court.

I. Debtor must file timely all postpetition tax returns and pay timely all postconfirmation tax liabilities directly to the

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.
December 2017 Page 3 F3015-1.01.CHAPTER13.PLAN
**EXHIBIT A (Page 3 of 14)**

appropriate taxing authorities.

J. Debtor must pay all amounts required to be paid under a Domestic Support Obligation that first became payable after the date of the filing of the bankruptcy petition.

K. If the Plan proposes to avoid a lien of a creditor, the Chapter 13 Trustee must not disburse any payments to that creditor on that lien until the Plan confirmation order is entered

**Section II. ORDER OF PAYMENT OF CLAIMS; CLASSIFICATION AND TREATMENT OF CLAIMS:**

Except as otherwise provided in this Plan or by court order, the Chapter 13 Trustee must disburse all available funds for the payment of claims as follows:

**A. ORDER OF PAYMENT OF CLAIMS:**

The order of the payments will be:

**1st** If there are Domestic Support Obligations, the order of priority will be:

(a) Domestic Support Obligations and the chapter 13 trustee's fee not exceeding the amount accrued on Plan Payments made to date;

(b) Administrative expenses until paid in full;

If there are no Domestic Support Obligations, the order of priority will be:

(a) The chapter 13 trustee's fee not exceeding the amount accrued on Plan Payments made to date;

(b) Administrative expenses (Class 1(a)) until paid in full.

**2nd** Subject to the 1st paragraph, *pro rata* to all secured claims and all priority unsecured claims except as otherwise provided in this Plan.

**3rd** Non-priority unsecured creditors will be paid pro rata except as otherwise provided in this Plan. No payment will be made on nonpriority unsecured claims until all the above administrative, secured and priority claims have been paid in full unless otherwise provided in this Plan.

**B. CLASSIFICATION AND TREATMENT OF CLAIMS:**

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2017* Page 4 **F3015-1.01.CHAPTER13.PLAN**

**EXHIBIT A (Page 4 of 14)**

## CLASS 1

**ALLOWED UNSECURED CLAIMS ENTITLED TO PRIORITY UNDER 11 U.S.C. §507**
Class 1 claims will be paid pro rata in the order set forth in Section II.A. above.

Unless otherwise ordered by the court, the claim amount stated on a proof of claim, and the dollar amount of any allowed administrative expense, controls over any contrary amount listed below.

| CATEGORY | AMOUNT OF PRIORITY CLAIM | INTEREST RATE, if any | TOTAL PAYMENT |
|---|---|---|---|
| **a. Administrative Expenses** | | | |
| (1) Chapter 13 Trustee's Fee – estimated at 11% of all payments to be made to all classes through this Plan. | | | |
| (2) Attorney's Fees | $4,280.00 | | $4,280.00 |
| (3) Chapter 7 Trustee's Fees | | | |
| (4) Other | | | |
| (5) Other | | | |
| **b. Other Priority Claims** | | | |
| (1) Internal Revenue Service | | | |
| (2) Franchise Tax Board | | | |
| (3) Domestic Support Obligation | | | |
| (4) Other | | | |
| (5) Other | | | |
| **c. Domestic Support Obligations that have been assigned to a governmental unit and are not to be paid in full in the Plan pursuant to §1322(a)(4) (this provision requires that payments in Part 2 Section I.A. be for a term of 60 months)** (*specify creditor name*): | | | |
| | | | |

## CLASS 2

**CLAIMS SECURED SOLELY BY PROPERTY THAT IS DEBTOR'S PRINCIPAL RESIDENCE ON WHICH OBLIGATION MATURES AFTER THE FINAL PLAN PAYMENT IS DUE**

*Check one.*

☐ None. *If "None" is checked, the rest of this form for Class 2 need not be completed.*

☑ Debtor will maintain and make the current contractual installment payments on the secured claims listed below, with any changes required by the applicable contract and noticed in conformity with any applicable rules. These

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.
December 2017 Page 5 F3015-1.01.CHAPTER13.PLAN
**EXHIBIT A (Page 5 of 14)**

Case 6:18-bk-17028-WJ Doc 2 Filed 08/20/18 Entered 08/20/18 13:25:31 Desc Main Document Page 6 of 14

payments will be disbursed either by the Chapter 13 Trustee or directly by Debtor, as specified below. Debtor will cure the prepetition arrearages, if any, on a listed claim through disbursements by the Chapter 13 Trustee, with interest, if any, at the rate stated.

Unless otherwise ordered by the court, the arrearage amount stated on a proof of claim controls over any contrary amount listed below.

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | AMOUNT OF ARREARAGE, IF ANY | INTEREST RATE | ESTIMATED MONTHLY PAYMENT ON ARREARAGE | ESTIMATED TOTAL PAYMENTS | POST-PETITION MORTGAGE PAYMENT DISBURSING AGENT |
|---|---|---|---|---|---|---|
| **Mr. Cooper** | **xxxxx9261** | **$25,000.00** | **0.00** | **$416.67** | **$25,000.00** | ☐ Trustee ☑ Debtor |

## CLASS 3A

**CLAIMS SECURED BY REAL OR PERSONAL PROPERTY WHICH ARE TO BE PAID IN FULL DURING THE TERM OF THIS PLAN.**

*Check one.*

☐ **None.** *If "None" is checked, the rest of this form for Class 3A need not be completed.*

☑ Debtor proposes:

(1) **Bifurcation of Claims - Dollar amounts/lien avoidance.** Except as provided below regarding bifurcation of claims into a secured part and an unsecured part, and unless otherwise ordered by the court, the claim amounts listed on a proof of claim control this Plan over any contrary amounts listed below.

(a) Bifurcated claims - secured parts: Debtor proposes that, for the purposes of distributions under this Plan, the dollar amount of secured claims in this Class 3A should be as set forth in the column headed "Secured Claim Amount." For that dollar amount to be binding on the affected parties, either

(i) Debtor must obtain a court order granting a motion fixing the dollar amount of the secured claim and/or avoiding the lien, or

(ii) Debtor must complete and comply with Part 2 Section IV.C., so that the Plan itself serves as such a motion; the "Included" boxes must be checked in Part 1 Paragraph 1.4 (indicating a nonstandard provision in Section IV.C.) and Part 1 Paragraphs 1.1 and/or 1.2 (indicating that this Plan includes valuation and lien avoidance, and/or avoidance of a judicial lien or nonpossessory, nonpurchase-money lien in Section IV.C.); and this Plan must be confirmed - if any one of those conditions is not satisfied, then the claim will not be bifurcated into a secured part and an unsecured part pursuant to this sub-paragraph.

(b) Bifurcated claims - unsecured parts: Any allowed claim that exceeds the amount of the secured claim will be treated as a nonpriority unsecured claim in Class 5 below.

(2) **Taxes/insurance.** Debtor must pay all required ongoing property taxes and homeowner's insurance for real property paid in full in this class.

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2017* Page 6 **F3015-1.01.CHAPTER13.PLAN**

**EXHIBIT A (Page 6 of 14)**

Case 6:18-bk-17028-WJ Doc 2 Filed 08/20/18 Entered 08/20/18 13:29:31 Desc Main Document Page 7 of 14

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | CLAIM TOTAL | SECURED CLAIM AMOUNT | INTEREST RATE | ESTIMATED MONTHLY PAYMENT | ESTIMATED TOTAL PAYMENTS |
|---|---|---|---|---|---|---|
| | | | | | | |
| | | | | | | |

**CLASS 3B**

**SECURED CLAIMS EXCLUDED FROM 11 U.S.C. §506**

*Check one.*

☐ **None.** *If "None" is checked, the rest of this form for Class 3B need not be completed.*

☑ The claims listed below were either:

1. Incurred within 910 days before the petition date and secured by a purchase money security interest in a motor vehicle acquired for the personal use of Debtor, or

2. Incurred within 1 year of the petition date and secured by a purchase money security interest in any other thing of value.

These claims will be paid in full under this Plan with interest at the rate stated below. Unless otherwise ordered by the court, the claim amount stated on a proof of claim controls over any contrary amount listed below.

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | CLAIM TOTAL | INTEREST RATE | ESTIMATED MONTHLY PAYMENT | ESTIMATED TOTAL PAYMENTS |
|---|---|---|---|---|---|
| **Capital One Bank (USA), N.A.*** | 1001 | **$24,825.99** | **4%** | **$457.21** | **$27,432.51** |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2017* Page 7 **F3015-1.01.CHAPTER13.PLAN**

**EXHIBIT A (Page 7 of 14)**

Main Document Page 15 of 56
Case 6:18-bk-17028-WJ Doc 2 Filed 08/20/18 Entered 08/20/18 13:25:31 Desc
Main Document Page 8 of 14

## CLASS 4

**OTHER CLAIMS ON WHICH THE LAST PAYMENT ON A CLAIM IS DUE AFTER THE DATE ON WHICH THE FINAL PLAN PAYMENT IS DUE**

*Check one.*

☑ None. *If "None" is checked, the rest of this form for Class 4 need not be completed.*

☐ Debtor will maintain and make the current contractual installment payments (Ongoing Payments) on the secured claims listed below, with any changes required by the applicable contract and noticed in conformity with any applicable rules. These payments will be disbursed either by the Chapter 13 Trustee or directly by Debtor, as specified below. Debtor will cure and pay the prepetition arrearages, if any, on a claim listed below through disbursements by the Chapter 13 Trustee, with interest, if any, at the rate stated. Unless otherwise ordered by the court, the dollar amount of arrearage stated on a proof of claim controls over any contrary amount listed below.

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | Cure of Default | | | | |
|---|---|---|---|---|---|---|
| | | AMOUNT OF ARREARAGE, IF ANY | INTEREST RATE | ESTIMATED MONTHLY PAYMENT ON ARREARAGE | ESTIMATED TOTAL PAYMENTS | ONGOING PAYMENT DISBURSING AGENT |
| | | | | | | Trustee<br>Debtor |

## CLASS 5A

**NON-PRIORITY UNSECURED CLAIMS NOT SEPARATELY CLASSIFIED**

Allowed nonpriority unsecured claims not separately classified must be paid pursuant to Section I.B. above.

**SEPARATE CLASSIFICATION:**

***Check all that apply if Debtor proposes any separate classification of nonpriority unsecured claims.***

☑ **None.** *If "None" is checked, the rest of this form for Class 5 need not be completed.*

## CLASS 5B

☐ **Maintenance of payments.** Debtor will maintain and make the contractual installment payments on the unsecured claims listed below on which the last payment is due after the final Plan payment. The contractual installment payments will be disbursed by Debtor.

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | INTEREST RATE | ESTIMATED MONTHLY PAYMENT | ESTIMATED TOTAL PAYMENTS |
|---|---|---|---|---|
| | | | | |

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.
December 2017 Page 8 F3015-1.01.CHAPTER13.PLAN
**EXHIBIT A (Page 8 of 14)**

## CLASS 5C

☐ **Maintenance of payments and cure of any default.** Debtor must maintain and make the contractual installment payments and cure any default in payments on the unsecured claims listed below on which the last payment is due after the final Plan payment. The claim for the arrearage amount will be paid in full as specified below and disbursed by the Chapter 13 Trustee.

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | AMOUNT OF ARREARAGE | Cure of Default | | |
|---|---|---|---|---|---|
| | | | INTEREST RATE | ESTIMATED MONTHLY PAYMENT | ESTIMATED TOTAL PAYMENTS |
| | | | | | |

## CLASS 5D

☐ **Other separately classified nonpriority unsecured claims.**

| NAME OF CREDITOR | LAST 4 DIGITS OF ACCOUNT NUMBER | AMOUNT TO BE PAID ON THE CLAIM | INTEREST RATE (if applicable) | ESTIMATED TOTAL AMOUNT OF PAYMENTS |
|---|---|---|---|---|
| | | | | |

## CLASS 6

### SURRENDER OF COLLATERAL

*Check one.*

☑ **None.** *If "None" is checked, the rest of this form for Class 6 need not be completed.*

☐ Debtor elects to surrender to each creditor listed below the collateral that secures the creditor's claim. Debtor requests that upon confirmation of the Plan the stay under 11 U.S.C. § 362(a) be terminated as to the collateral only and that the stay under 11 U.S.C. §1301 be terminated in all respects. Any allowed unsecured claim resulting from the disposition of the collateral will be treated in Class 5 above.

| Creditor Name: | Description: |
|---|---|
| | |

## CLASS 7

### EXECUTORY CONTRACTS AND UNEXPIRED LEASES

*Check one.*

☑ **None.** *If "None" is checked, the rest of this form for Class 7 need not be completed.*

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.
December 2017 Page 9 F3015-1.01.CHAPTER13.PLAN

**EXHIBIT A (Page 9 of 14)**

☐ The executory contracts and unexpired leases listed below are treated as specified (*identify the contract or lease at issue and the other party(ies) to the contract or lease*):

**Creditor Name:** ______________________________

**Description:** ______________________________
☐ **Rejected** ☐ **Assumed; cure amount (if any): $** __________

**Creditor Name:** ______________________________

**Description:** ______________________________
☐ **Rejected** ☐ **Assumed; cure amount (if any): $** __________

**Payments to be cured within _______ months of filing of the bankruptcy petition. All cure payments will be made through the Chapter 13 Trustee.**

☐ See attachment for additional claims in Class 7.

**Section III. PLAN SUMMARY**

| | |
|---|---|
| CLASS 1a | $4,279.80 |
| CLASS 1b | $0.00 |
| CLASS 1c | $0.00 |
| CLASS 2 | $25,000.00 |
| CLASS 3A | $27,432.51 |
| CLASS 3B | $0.00 |
| CLASS 4 | $0.00 |
| CLASS 5 | $81,720.29 |
| CLASS 7 | $0.00 |
| SUB-TOTAL | $138,432.60 |
| CHAPTER 13 TRUSTEE'S FEE (Estimated 11% unless advised otherwise) | $15,227.40 |
| TOTAL PAYMENT | $153,660.00 |

**Section IV. NON-STANDARD PLAN PROVISIONS**

☐ **None.** *If "None" is checked, the rest of Section IV need not be completed.*

**Pursuant to FRBP 3015(c), Debtor must set forth all nonstandard Plan provisions in this Plan in this separate Section IV of this Plan and must check off the "Included" box or boxes in Paragraphs 1.1, 1.2, 1.3 and/or 1.4 of Part 1 of this Plan. Any nonstandard Plan provision that does not comply with these requirements is ineffective.** A nonstandard Plan provision means any Plan provision not otherwise included in this mandatory Chapter 13 Plan form, or any Plan provision deviating from this form.

**The nonstandard Plan provisions seeking modification of liens and security interests address only those liens and security interests known to Debtor, and known to be subject to avoidance, and all rights are reserved as to any matters not currently known to Debtor.**

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.
*December 2017* Page *10* F3015-1.01.CHAPTER13.PLAN

**EXHIBIT A (Page 10 of 14)**

☑ A. Debtor's Intent to File Separate Motion to Value Property Subject to Creditor's Lien or Avoid Creditor's Lien [11 U.S.C. § 506(a) and (d)]. Debtor will file motion(s) to value real or personal property of the bankruptcy estate and/or to avoid a lien pursuant to 11 U.S.C § 506(a) and (d), as specified in **Attachment A**.

☐ B. Debtor's Intent to File Separate Motion to Avoid Creditor's Judicial Lien or Nonpossessory, Nonpurchase Security Interest [11 U.S.C. § 522(f)]. Debtor will file a Motion to avoid a judicial lien or nonpossessory, nonpurchase-money security interest, on real or personal property of the bankruptcy estate listed below pursuant to 11 U.S.C § 522(f). If the court enters an order avoiding a lien under 11 U.S.C. § 522(f), the Chapter 13 Trustee will not pay any claim filed based on that lien as a secured claim.

**Name of Creditor Lienholder/Servicer:** Select Portfolio Servicing, Inc.

**Description of lien and collateral (*e.g.*, 2nd lien on 123 Main St.):** Second Lien on Residence located at: 78845 Villeta Drive, La Quinta, CA 92253

**Name of Creditor Lienholder/Servicer:** ____________________

**Description of lien and collateral (*e.g.*, 2nd lien on 123 Main St.):** ____________________

**Name of Creditor Lienholder/Servicer:** ____________________

**Description of lien and collateral (*e.g.*, 2nd lien on 123 Main St.):** ____________________

C. Debtor's Request in this Plan to Modify Creditor's Secured Claim and Lien. Debtor proposes to modify the following secured claims and liens in this Plan without a separate motion or adversary proceeding - this Plan will serve as the motion to value the collateral and/or avoid the liens as proposed below. **To use this option, Debtor must serve this Plan, LBR Form F 3015-1.02.NOTICE.341.LIEN.MOD.PLAN.CONFRM and all related exhibits as instructed in that form.**

**DEBTOR'S REQUEST TO MODIFY CREDITOR'S SECURED CLAIM AND LIEN**

**TO CREDITOR LIENHOLDER/SERVICER** **Capital One Bank (USA), N.A.***

☐ Real property collateral (street address and/or legal description or document recording number, including county of recording:

____________________

(*attach page with legal description of property or document recording number as appropriate*).

☑ Other collateral (*add description such as judgment date, date and place of lien recording, book and page number*):
**2017 Toyota RAV4 18,000 miles**
**Contract Terms: Purchased Vehicle - New, Amount Financed - $33,341.18, Interest Rate - 10.16%, Terms - 72 Months, Monthly - $622.99, Final Payment Due - 03/16/2023.**

☐ 11 U.S.C. § 522(f) – Debtor seeks avoidance of your lien(s) on the above described collateral effective immediately upon issuance of the order confirming this Plan.

☐ 11 U.S.C. § 506(a) and (d) – Debtor seeks avoidance of your lien(s) on the above described collateral that will be effective upon the earliest to occur of either payment of the underlying debt determined under nonbankruptcy law or one of the following:

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.
*December 2017* Page *11* **F3015-1.01.CHAPTER13.PLAN**
**EXHIBIT A (Page 11 of 14)**

Main Document Page 19 of 56
Case 6:18-bk-17028-WJ Doc 2 Filed 08/20/18 Entered 08/20/18 13:25:31 Desc
Main Document Page 12 of 14

(*check all that apply and see* LBR Form F 4003-2.4.ORDER.AFTERDISCH):

☐ (1) discharge under 11 U.S.C. § 1328, or

☐ (2) if the value of the "amount of remaining secured claim" listed below is "$-0-" then upon completion of all Plan payments.

Value of collateral: ........................................................................................ $ 18,250.00
Liens reducing equity (to which subject lien can attach): $ 0.00 + $ ____ + $ ____ = .. ($ 0.00 )
Exemption (only applicable for lien avoidance under 11 U.S.C. § 522(f):........................................ ($ 0.00 )

**Wherefore, Debtor requests that this court issue an order granting the foregoing property valuation and/or lien avoidance of the above-listed creditor on the above-described collateral in the form Attachment B, C and/or D to this Plan, as applicable. (*Debtor must use and attach a separate Attachment B, C and/or D which are also mandatory court forms for modification of each secured claim and lien.*)**

Amount of remaining secured claim (negative results should be listed as $-0): ............................ $ 18,250.00

*Note*: See other parts of this Plan for the proposed treatment of any remaining secured claim (generally Class 3).

**DEBTOR'S REQUEST TO MODIFY CREDITOR'S SECURED CLAIM AND LIEN**

**TO CREDITOR LIENHOLDER/SERVICER** **Jon Christensen**

☑ Real property collateral (street address and/or legal description or document recording number, including county of recording:
**Notice Only**
**78845 Villeta Drive La Quinta, CA 92253**
(*attach page with legal description of property or document recording number as appropriate*).

☑ Other collateral (*add description such as judgment date, date and place of lien recording, book and page number*):

☐ 11 U.S.C. § 522(f) – Debtor seeks avoidance of your lien(s) on the above described collateral effective immediately upon issuance of the order confirming this Plan.

☐ 11 U.S.C. § 506(a) and (d) – Debtor seeks avoidance of your lien(s) on the above described collateral that will be effective upon the earliest to occur of either payment of the underlying debt determined under nonbankruptcy law or one of the following:

(*check all that apply and see* LBR Form F 4003-2.4.ORDER.AFTERDISCH):

☐ (1) discharge under 11 U.S.C. § 1328, or

☐ (2) if the value of the "amount of remaining secured claim" listed below is "$-0-" then upon completion of all Plan payments.

Value of collateral: ........................................................................................ $ 300,000.00
Liens reducing equity (to which subject lien can attach): $ 379,191.42 + $ ____ + $ ____ = .. ($ 379,191.42 )
Exemption (only applicable for lien avoidance under 11 U.S.C. § 522(f):........................................ ($ 26,800.00 )

**Wherefore, Debtor requests that this court issue an order granting the foregoing property valuation and/or lien avoidance of the above-listed creditor on the above-described collateral in the form Attachment B, C and/or D to this Plan, as applicable. (*Debtor must use and attach a separate Attachment***

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.
*December 2017* Page 12 **F3015-1.01.CHAPTER13.PLAN**

**EXHIBIT A (Page 12 of 14)**

Main Document Page 13 of 14
Case 6:22-bk-11075-WJ Doc 1 Filed 08/16/22 Entered 08/16/22 12:35:28 Desc
Main Document Page 20 of 56

***B, C and/or D which are also mandatory court forms for modification of each secured claim and lien.)***

Amount of remaining secured claim (negative results should be listed as $-0): ............................ $ **-105,991.42**

*Note*: See other parts of this Plan for the proposed treatment of any remaining secured claim (generally Class 3).

D. **Other Non-Standard Plan Provisions: (*use attachment, if necessary*):**

## V. REVESTING OF PROPERTY

Property of the bankruptcy estate will not revest in Debtor until a discharge is granted or the case is dismissed or closed without discharge. Revesting will be subject to all liens and encumbrances in existence when the case was filed, except those liens avoided by court order or extinguished by operation of law. In the event the case is converted to a case under Chapter 7, 11, or 12 of the Bankruptcy Code, the property of the estate will vest in accordance with applicable law. After confirmation of this Plan, the Chapter 13 Trustee will not have any further authority or fiduciary duty regarding use, sale, or refinance of property of the estate except to respond to any motion for proposed use, sale, or refinance as required by the LBRs. Prior to any discharge or dismissal, Debtor must seek approval of the court to purchase, sell, or refinance real property.

**By filing this document, the Attorney for Debtor, or Debtor if not represented by an attorney, also certify(ies) that the wording and order of the provisions in this Plan are identical to those contained in the Central District of California Chapter 13 Plan other than any nonstandard Plan provisions included in Section IV.**

Date: 8/20/18

**Jenny L Doling/Summer M Shaw**
Attorney for Debtor(s)

**Maximiliano Sanchez**
Debtor 1

**Rosa Sylvia Garcia**
Debtor 2

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2017* Page *13* **F3015-1.01.CHAPTER13.PLAN**

**EXHIBIT A (Page 13 of 14)**

## ATTACHMENT A TO CHAPTER 13 PLAN/CONFIRMATION ORDER

**(11 U.S.C. §§ 506: VALUATION/LIEN AVOIDANCE BY SEPARATE MOTION(S))**

☐ **None.** *If "None" is checked, the rest of this Attachment A need non be completed.*

1. **Creditor Lienholder/Servicer:** Select Portfolio Servicing, Inc.
   **Subject Lien** (*e.g.*, 2nd Lien on 123 Main St.): Second Lien on Residence located at: 78845 Villeta Drive, La Quinta, CA 92253

2. **Creditor Lienholder/Servicer:** ______
   **Subject Lien** (*e.g.*, 3rd Lien on 123 Main St.): ______

3. **Creditor Lienholder/Servicer:** ______
   **Subject Lien** (*e.g.*, 4th Lien on 123 Main St.): ______

4. **Creditor Lienholder/Servicer:** ______
   **Subject Lien** (*e.g.*, 2nd Lien on 123 Main St.): ______

5. **Creditor Lienholder/Servicer:** ______
   **Subject Lien** (*e.g.*, 3rd Lien on 123 Main St.): ______

6. **Creditor Lienholder/Servicer:** ______
   **Subject Lien** (*e.g.*, 4th Lien on 123 Main St.): ______

7. **Creditor Lienholder/Servicer:** ______
   **Subject Lien** (*e.g.*, 2nd Lien on 123 Main St.): ______

8. **Creditor Lienholder/Servicer:** ______
   **Subject Lien** (*e.g.*, 3rd Lien on 123 Main St.): ______

9. **Creditor Lienholder/Servicer:** ______
   **Subject Lien** (*e.g.*, 4th Lien on 123 Main St.): ______

*(Attach additional pages for more liens/provisions.)*

**CERTIFICATION:** I have prepared this attachment (including any additional pages) for use by the Chapter 13 Trustee. I certify under penalty of perjury under the laws of the United States of America that the information provided in this attachment is accurate to the best of my knowledge after reasonable inquiry, and I acknowledge that the Chapter 13 Trustee has no duty to verify the accuracy of that information.

Executed on (date) ______

Print name: **Jenny L Doling/Summer M Shaw**

☑ Attorney for Debtor or ☐ Debtor appearing without attorney

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*December 2017* Page 14 **F3015-1.01.CHAPTER13.PLAN**

**EXHIBIT A (Page 14 of 14)**

FILED & ENTERED

OCT 12 2018

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY gooch DEPUTY CLERK

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

RIVERSIDE DIVISION

In re:

MAXIMILIANO SANCHEZ and ROSA SYLVIA GARCIA,

Debtors.

Case No.: 6:18-bk-17028-WJ

CHAPTER 13

**ORDER GRANTING VALUATION MOTION**

Hearing:
Date: October 10, 2018
Time: 2:00 p.m.
Place: United States Bankruptcy Court
Courtroom 304
3420 Twelfth Street
Riverside, CA 92501

On October 10, 2018 at 2:00 p.m., the Court held a hearing regarding the motion of the debtors, Maximiliano Sanchez and Rosa Garcia, entitled "Debtor's Motion To Avoid Junior Lien On Principal Residence [11 U.S.C. § 506(d)]" [Docket #26] ("Motion"). All appearances were noted on the record. The Motion pertains to Select Portfolio Servicing, Inc. ("Creditor") and the real property located at 78845 Villeta Drive, La Quinta, CA 92253 ("Property") and instrument number 2007-0497808 recorded in Riverside County on August 1, 2007.

Having considered the Motion, the declarations in support thereof, the papers and

**EXHIBIT B (Page 1 of 3)**

pleadings filed in this case, the Court hereby finds that good cause exists to grant the Motion (in part).

Accordingly, the Court hereby ORDERS, ADJUDGES and DECREES:

1. The Motion is granted in part. The Court finds that the Property has a value of no more than $327,000 as of October 10, 2018.

2. To the extent that the title of the Motion or the content of the Motion seek relief avoiding, extinguishing, attacking or otherwise modifying any lien, that language and relief is not approved by the Court. The relief granted in this order is limited solely to valuing the collateral of a junior lienholder and determining the treatment of its claims in this bankruptcy case. Nothing in this order shall be construed to avoid a lien or determine the extent, validity, or priority of a lien or security interest. The lien of the junior lienholder will remain of record and the junior lienholder shall retain all rights under the lien unless and until the Court enters a further order or judgment avoiding the lien. If the debtors timely perform all obligations under the confirmed plan and obtain a discharge, the debtors may thereafter seek to obtain a further order or judgment extinguishing or avoiding the junior lien.[1]

3. The Motion contains evidence indicating it was directed at the Creditor and the Motion also contains *prima facie* evidence that the Motion was properly served upon the Creditor.[2] Therefore, the relief set forth in this order is granted, but only as to the Creditor. This order is binding upon the Creditor (and any successors-in-interest to or assignees of the Creditor) but not upon any other creditor, any affiliate of the Creditor or any other party.

4. Any proof of claim of the Creditor based upon a junior lien secured by the Property ("Junior Claim") shall be allowed and treated as a non-priority, unsecured claim in this chapter 13 case and shall be paid through the chapter 13 plan pro rata with all other unsecured

---

[1] If, in addition to the Junior Claim, the Creditor is also the holder of another lien against the Property that is the senior lien against the Property, then none of the terms of this order shall be construed to apply to that senior lien or any proof of claim based upon that senior lien. This order only applies to any junior lien of the Creditor.

[2] Nothing in this order shall be construed as waiving the right of the Creditor to challenge this order pursuant to applicable federal law (including, but not limited to, Rule 60(b)(4) of the Federal Rules of Civil Procedure and Rule 9024 of the Federal Rules of Bankruptcy Procedure) if the Creditor can demonstrate the order was obtained as a result of insufficient service of process of the Motion.

claims. The Creditor is not required to, but may file an amended proof of claim asserting its Junior Claim as an unsecured claim to be paid in accordance with the chapter 13 plan in this case. If an amended claim is not filed, the chapter 13 trustee shall treat any Junior Claim (secured or unsecured) filed by the Creditor as entirely unsecured.

5. No monthly mortgage payments shall be made on account of the Junior Claim.

IT IS SO ORDERED.

###

Date: October 12, 2018

Wayne Johnson
United States Bankruptcy Judge

**EXHIBIT B (Page 3 of 3)**

**Fill in this information to identify the case:**

Debtor 1 MAXIMILIANO SANCHEZ

Debtor 2 (Spouse, if filing) ROSA SYLVIA GARCIA

United States Bankruptcy Court for the: CENTRAL DISTRICT OF CALIFORNIA

Case number 18-17028

Official Form 410

# Proof of Claim

04/16

**Read the instructions before filling out this form. This form is for making a claim for payment in a bankruptcy case. Do not use this form to make a request for payment of an administrative expense. Make such a request according to 11 U.S.C. § 503.**

**Filers must leave out or redact** information that is entitled to privacy on this form or on any attached documents. Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgments, mortgages, and security agreements.**Do not send original documents;** they may be destroyed after scanning. If the documents are not available, explain in an attachment.

A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157, and 3571.

**Fill in all the information about the claim as of the date the case was filed. That date is on the notice of bankruptcy** (Form 309) **that you received.**

**Part 1: Identify the Claim**

1. **Who is the current creditor?**

DLJ Mortgage Capital, Inc.
Name of the current creditor (the person or entity to be paid for this claim)
Other names the creditor used with the debtor ______

2. **Has this claim been acquired from someone else?**

☑ No
☐ Yes. From whom? ______

3. **Where should notices and payments to the creditor be sent?**

Federal Rule of Bankruptcy Procedure (FRBP) 2002(g)

| **Where should notices to the creditor be sent?** | **Where should payments to the creditor be sent?** (if different) |
|---|---|
| Select Portfolio Servicing, Inc. (Name) | Select Portfolio Servicing, Inc. (Name) |
| P.O. Box 65250 (Number Street) | Attn: Remittance Processing, P.O. Box 65450 (Number Street) |
| Salt Lake City (City) UT (State) 84165-0250 (ZIP Code) | Salt Lake City (City) UT (State) 84165-0450 (ZIP Code) |
| Contact phone Tel # 1-800-258-8602 | Contact phone Tel # 1-800-258-8602 |
| Contact email N/A | Contact email N/A |

Uniform claim identifier for electronic payments in ch apter (if you use one):
_ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _

4. **Does this claim amend one already filed?**

☑ No
☐ Yes. Claim number on court claims registry (if known)______ Filed on ______ MM / DD / YYYY

5. **Do you know if anyone else has filed a proof of claim for this claims?**

☑ No
☐ Yes. Who made the earlier filing? ______

**EXHIBIT C (Page 1 of 23)**

**Part 2: Give Information About the Claim as of the Date the Case was Filed**

| | |
|---|---|
| 6. **Do you have any number you use to identify the debtor?** | ☐ No<br>☑ Yes. Last 4 digits of the debtor's account or any number you use to identify the debtor: 1704 |
| 7. **How much is the claim?** | $52,488.27 **Does this amount include interest or other charges?**<br>☐ No<br>☑ Yes. Attach statement itemizing interest, fees, expenses, or other charges required by Bankruptcy Rule 3001(c)(2)(A). |
| 8. **What is the basis of the claims?** | Example: Goods sold, money loaned, lease, services performed, personal injury or wrongful death, or credit card.<br>Attach redacted copies of any documents supporting the claim required by Bankruptcy Rule 3001(c).<br>Limit disclosing information that is entitled to privacy, such as healthcare information.<br><br>Money loaned |
| 9. **Is all or part of the claim secured?** | ☐ No<br>☑ Yes. The claim is secured by a lien on property.<br><br>**Nature of property:**<br>☑ Real estate. If the claim is secured by the debtor's principal residence, file a *Mortgage Proof of Claim Attachment* (Official Form 410-A) with this *Proof of Claim.*<br>☐ Motor vehicle.<br>☐ Other. Describe: ______<br><br>**Basis for perfection:** Recorded Deed of Trust / Mortgage<br>Attach redacted copies of documents, if any, that show evidence of perfection of a security interest (for example, a mortgage, lien, certificate of title, financing statement, or other document that shows the lien has been filed or recorded.)<br><br>**Value of property:** $______<br><br>**Amount of the claim that is secured:** $52,488.27<br><br>**Amount of the claim that is unsecured:** $______ (The sum of the secured and unsecured amount should match the amount in line 7.)<br><br>**Amount necessary to cure any default as of the date of the petition:** $5,042.28<br><br>**Annual Interest Rate (when case was filed)** 7.00000%<br>☐ Fixed<br>☑ Variable |
| 10. **Is this claim based on a lease?** | ☑ No<br>☐ Yes. **Amount necessary to cure any default as of the date of the petition.** $______ |
| 11. **Is this claim subject to a right of setoff?** | ☑ No<br>☐ Yes. Identify the property: ______ |

**EXHIBIT C (Page 2 of 23)**

| | | |
|---|---|---|
| 12. **Is all or part of the claim entitled to priority under 11 U.S.C. § 507(a)?**<br><br>A claim may be partly priority and partly nonpriority. For example, in some categories, the law limits the amount entitled to priority. | ☑ No<br>☐ Yes. *Check all that apply:* | **Amount entitled to priority** |
| | ☐ Domestic support obligations (including alimony and child support) under 11 U.S.C. § 507(a)(1)(A) or(a)(1)(B). | $____________ |
| | ☐ Up to $2,850* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use. 11 U.S.C § 507(a)(7). | $____________ |
| | ☐ Wages, salaries, or commissions (up to $12,850*) earned within 180 days before the bankruptcy petition is filed or the debtor's business ends, whichever is earlier. 11 U.S.C. § 507(a)(4). | $____________ |
| | ☐ Taxes or penalties owed to governmental units. 11 U.S.C § 507(a)(8). | $____________ |
| | ☐ Contributions to an employee benefit plan. 11 U.S.C § 507(a)(5). | $____________ |
| | ☐ Other. Specify subsection of 11 U.S.C § 507(a)(__) that applies. | $____________ |
| | * Amounts are subject to adjustment on 4/01/19 and every 3 years after that for cases begun on or after the date of adjustment. | |

## Part 3: Sign Below

**The person completing this proof of claim must sign and date it. FRBP 9011(b).**

If you file this claim electronically, FRBP 5005(a)(2) authorizes courts to establish local rules specifying what a signature is.

**A person who files a fraudulent claim could be fined up to $500,000, imprisoned for up to 5 years, or both. 18 U.S.C. §§ 152, 157 and 3571.**

*Check the appropriate box:*

☐ I am the creditor.

☑ I am the creditor's attorney or authorized agent.

☐ I am the trustee, or the debtor, or their authorized agent. Bankruptcy Rule 3004.

☐ I am a guarantor, surety, endorser, or other codebtor. Bankruptcy Rule 3005.

I understand that an authorized signature on this Proof of Claim serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.

I have examined the information in this Proof of Claim and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on date 10/29/2018
MM / DD / YYYY

/s/ Nancy Lee
Signature

**Print the name of the person who is completing and signing this claim:**

Name: Nancy Lee, Esq.
First name Middle name Last name

Title: Attorney for Creditor

Company: McCarthy & Holthus, LLP
Identify the corporate services as the company if the authorized agent is a servicer.

Address: 411 Ivy Street
Number Street

San Diego, CA 92101
City State ZIP Code

Contact phone 877-369-6122 Email bknotice@mccarthyholthus.com

**EXHIBIT C (Page 3 of 23)**

**Mortgage Proof of Claim Attachment** (04/16)

**If you file a claim secured by a security interest in the debtor's principal residence, you must use this form as an attachment to your proof of claim. See separate instructions.**

**Part 1: Mortgage and Case Information**

| | |
|---|---|
| Case number: | 18-17028 |
| Debtor 1: | MAXIMILIANO SANCHEZ |
| Debtor 2: | ROSA SYLVIA GARCIA |
| Last 4 digits to identify: | 1704 |
| Creditor: | DLJ Mortgage Capital, Inc. |
| Servicer: | Select Portfolio Servicing, Inc. |
| Fixed accrual/daily simple interest/other: | Variable: 7.00000% |

**Part 2: Total Debt Calculation**

| | |
|---|---|
| Principal balance: | $48,928.47 |
| | $0.00 |
| Interest Due: | $3,478.09 |
| Fees, costs due: | $81.71 |
| Escrow deficiency for funds advanced: | $0.00 |
| Less total funds on hand: | $0.00 |
| Total debt: | $52,488.27 |

**Part 3: Arrearage as of Date of the Petition**

| | |
|---|---|
| Principal & interest due: | $4,960.57 |
| Prepetition Fees due: | $81.71 |
| Escrow deficiency for funds advanced: | $0.00 |
| Projected escrow shortage: | $0.00 |
| Less funds on hand: | $0.00 |
| Total prepetition arrearage: | $5,042.28 |

**Part 4: Monthly Mortgage Payment**

| | |
|---|---|
| Principal & interest due: | $469.34 |
| Monthly escrow: | $0.00 |
| Private mortgage insurance: | $0.00 |
| Total monthly payment: | $469.34 |

**Part 5: Loan Payment History from First Date of Default**

| Account Activity | | | | | | How Funds Were Applied/Amount Incurred | | | | | | Balance After Amount Received or Incurred | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| A. | B. | C. | D. | E. | F. | G. | H. | I. | J. | K. | L. | M. | N. | O. | P. | Q. |
| Date | Contractual payment amount | Funds received | Amount Incurred | Description | Contractual Due date | Prin, int & esc past due balance | Amount to principal | Amount to Interest | Amount to escrow | Amount to fees or charges | Unapplied funds | Principal Balance | Accrued Interest balance | Escrow Balance | Fees/ Charges balance | Unapplied funds balance |
| | | | | | | $0.00 | | | | | | $48,928.47 | | $0.00 | $0.00 | $0.00 |
| 1/21/2016 | $244.64 | | | Monthly Payment | | $244.64 | | | | | | $48,928.47 | | $0.00 | $0.00 | $0.00 |
| 2/21/2016 | $254.84 | | | Monthly Payment | | $499.48 | | | | | | $48,928.47 | | $0.00 | $0.00 | $0.00 |
| 3/16/2016 | | | $15.00 | PROP INSPECTION | | $499.48 | | | | $15.00 | | $48,928.47 | | $0.00 | $15.00 | $0.00 |
| 3/21/2016 | $254.84 | | | Monthly Payment | | $754.32 | | | | | | $48,928.47 | | $0.00 | $15.00 | $0.00 |
| 4/4/2016 | | $244.64 | | Modified Payment | 1/1/2016 | $509.68 | | $244.64 | | | | $48,928.47 | | $0.00 | $15.00 | $0.00 |
| 4/4/2016 | | $55.36 | | Modified Payment | 2/1/2016 | $509.68 | | $55.36 | | | | $48,928.47 | | $0.00 | $15.00 | $0.00 |
| 4/4/2016 | | | | Shorted Escrow Amount | 2/1/2016 | $509.68 | | | -$199.48 | | | $48,928.47 | | $0.00 | $15.00 | $0.00 |
| 4/20/2016 | | | $15.00 | PROP INSPECTION | | $509.68 | | | | $15.00 | | $48,928.47 | | $0.00 | $30.00 | $0.00 |
| 4/21/2016 | $254.84 | | | Monthly Payment | | $764.52 | | | | | | $48,928.47 | | $0.00 | $30.00 | $0.00 |
| 5/19/2016 | | $199.48 | | Modified Payment | 2/1/2016 | $509.68 | | $199.48 | | | | $48,928.47 | | $0.00 | $30.00 | $0.00 |
| 5/19/2016 | | | | Shorted Escrow Amount | 2/1/2016 | $509.68 | | | -$55.36 | | | $48,928.47 | | $0.00 | $30.00 | $0.00 |
| 5/19/2016 | | $75.52 | | Modified Payment | 3/1/2016 | $254.84 | | $75.52 | | | | $48,928.47 | | $0.00 | $30.00 | $0.00 |
| 5/19/2016 | | | | Shorted Escrow Amount | 3/1/2016 | $254.84 | | | ($179.32) | | | $48,928.47 | | $0.00 | $30.00 | $0.00 |
| 5/21/2016 | $254.84 | | | Monthly Payment | | $509.68 | | | | | | $48,928.47 | | $0.00 | $30.00 | $0.00 |
| 5/24/2016 | | | $15.00 | PROP INSPECTION | | $509.68 | | | | $15.00 | | $48,928.47 | | $0.00 | $45.00 | $0.00 |
| 6/7/2016 | | | $89.00 | PROP VALUATION | | $509.68 | | | | $89.00 | | $48,928.47 | | $0.00 | $134.00 | $0.00 |
| 6/8/2016 | | | ($89.00) | PROP VALUATION | | $509.68 | | | | ($89.00) | | $48,928.47 | | $0.00 | $45.00 | $0.00 |
| 6/13/2016 | | | $0.02 | Interest on Advances | | $509.68 | | | | $0.02 | | $48,928.47 | | $0.00 | $45.02 | $0.00 |
| 6/21/2016 | $254.84 | | | Monthly Payment | | $764.52 | | | | | | $48,928.47 | | $0.00 | $45.02 | $0.00 |
| 6/21/2016 | | $500.00 | | Custom Payment | 3/1/2016 | $764.52 | | | | | $500.00 | $48,928.47 | | $0.00 | $45.02 | $500.00 |
| 6/23/2016 | | $0.00 | | Custom Payment | 3/1/2016 | $764.52 | | $179.32 | | | ($179.32) | $48,928.47 | | $0.00 | $45.02 | $320.68 |
| 6/23/2016 | | | | Shorted Escrow Amount | 3/1/2016 | $764.52 | | | ($75.52) | | | $48,928.47 | | $0.00 | $45.02 | $320.68 |
| 6/24/2016 | | $0.00 | | Custom Payment | 4/1/2016 | $509.68 | | $254.84 | | | ($254.84) | $48,928.47 | | $0.00 | $45.02 | $65.84 |
| 6/27/2016 | | $0.00 | | Modified Payment | 5/1/2016 | $509.68 | | $65.84 | | | ($65.84) | $48,928.47 | | $0.00 | $45.02 | $0.00 |
| 6/27/2016 | | | | Shorted Escrow Amount | 5/1/2016 | $509.68 | | | ($189.00) | | | $48,928.47 | | $0.00 | $45.02 | $0.00 |
| 6/29/2016 | | | $15.00 | PROP INSPECTION | | $509.68 | | | | $15.00 | | $48,928.47 | | $0.00 | $60.02 | $0.00 |
| 6/30/2016 | | | ($15.00) | PROP INSPECTION | | $509.68 | | | | ($15.00) | | $48,928.47 | | $0.00 | $45.02 | $0.00 |
| 7/11/2016 | | | $0.01 | Interest on Advances | | $509.68 | | | | $0.01 | | $48,928.47 | | $0.00 | $45.03 | $0.00 |
| 7/21/2016 | $254.84 | | | Monthly Payment | | $764.52 | | | | | | $48,928.47 | | $0.00 | $45.03 | $0.00 |
| 8/3/2016 | | | $15.00 | PROP INSPECTION | | $764.52 | | | | $15.00 | | $48,928.47 | | $0.00 | $60.03 | $0.00 |
| 8/8/2016 | | $500.00 | | Custom Payment | 5/1/2016 | $764.52 | | | | | $500.00 | $48,928.47 | | $0.00 | $60.03 | $500.00 |
| 8/9/2016 | | $0.00 | | Custom Payment | 5/1/2016 | $509.68 | | $189.00 | | | ($189.00) | $48,928.47 | | $0.00 | $60.03 | $311.00 |
| 8/9/2016 | | | | Shorted Escrow Amount | 5/1/2016 | $509.68 | | | ($65.84) | | | $48,928.47 | | $0.00 | $60.03 | $311.00 |
| 8/10/2016 | | $0.00 | | Custom Payment | 6/1/2016 | $254.84 | | $254.84 | | | ($254.84) | $48,928.47 | | $0.00 | $60.03 | $56.16 |
| 8/11/2016 | | $0.00 | | Modified Payment | 7/1/2016 | $254.84 | | $56.16 | | | ($56.16) | $48,928.47 | | $0.00 | $60.03 | $0.00 |
| 8/11/2016 | | | | Shorted Escrow Amount | 7/1/2016 | $254.84 | | | ($198.68) | | | $48,928.47 | | $0.00 | $60.03 | $0.00 |
| 8/16/2016 | | | $0.08 | Interest on Advances | | $254.84 | | | | $0.08 | | $48,928.47 | | $0.00 | $60.11 | $0.00 |
| 8/21/2016 | $254.84 | | | Monthly Payment | | $509.68 | | | | | | $48,928.47 | | $0.00 | $60.11 | $0.00 |
| 9/12/2016 | | | $0.32 | Interest on Advances | | $509.68 | | | | $0.32 | | $48,928.47 | | $0.00 | $60.43 | $0.00 |
| 9/14/2016 | | | $15.00 | PROP INSPECTION | | $509.68 | | | | $15.00 | | $48,928.47 | | $0.00 | $75.43 | $0.00 |
| 9/21/2016 | $254.84 | | | Monthly Payment | | $764.52 | | | | | | $48,928.47 | | $0.00 | $75.43 | $0.00 |
| 10/3/2016 | | $198.68 | | Modified Payment | Jul-16 | $509.68 | | $198.68 | | | | $48,928.47 | | $0.00 | $75.43 | $0.00 |

| | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/3/2016 | | | | Shorted Escrow Amount | Jul-16 | $509.68 | | | ($56.16) | | | $48,928.47 | | $0.00 | $75.43 | $0.00 |
| 10/3/2016 | | $151.32 | | Modified Payment | Aug-16 | $254.84 | | $151.32 | | | | $48,928.47 | | $0.00 | $75.43 | $0.00 |
| 10/3/2016 | | | | Shorted Escrow Amount | Aug-16 | $254.84 | | | ($103.52) | | | $48,928.47 | | $0.00 | $75.43 | $0.00 |
| 10/11/2016 | | | $0.36 | Interest on Advances | | $254.84 | | | | $0.36 | | $48,928.47 | | $0.00 | $75.79 | $0.00 |
| 10/19/2016 | | | $15.00 | PROP INSPECTION | | $254.84 | | | | $15.00 | | $48,928.47 | | $0.00 | $90.79 | $0.00 |
| 10/21/2016 | $254.84 | | | Monthly Payment | | $509.68 | | | | | | $48,928.47 | | $0.00 | $90.79 | $0.00 |
| 11/3/2016 | | $400.00 | | Custom Payment | Aug-16 | $509.68 | | | | | $400.00 | $48,928.47 | | $0.00 | $90.79 | $400.00 |
| 11/4/2016 | | $0.00 | | Custom Payment | Aug-16 | $509.68 | | $103.52 | | | ($103.52) | $48,928.47 | | $0.00 | $90.79 | $296.48 |
| 11/4/2016 | | | | Shorted Escrow Amount | Aug-16 | $509.68 | | | ($151.32) | | | $48,928.47 | | $0.00 | $90.79 | $296.48 |
| 11/7/2016 | | $0.00 | | Custom Payment | Sep-16 | $254.84 | | $254.84 | | | ($254.84) | $48,928.47 | | $0.00 | $90.79 | $41.64 |
| 11/8/2016 | | $0.00 | | Modified Payment | Oct-16 | $254.84 | | $41.64 | | | ($41.64) | $48,928.47 | | $0.00 | $90.79 | $0.00 |
| 11/8/2016 | | | | Shorted Escrow Amount | Oct-16 | $254.84 | | | ($213.20) | | | $48,928.47 | | $0.00 | $90.79 | $0.00 |
| 11/11/2016 | | | $0.45 | Interest on Advances | | $254.84 | | | | $0.45 | | $48,928.47 | | $0.00 | $91.24 | $0.00 |
| 11/21/2016 | $254.84 | | | Monthly Payment | | $509.68 | | | | | | $48,928.47 | | $0.00 | $91.24 | $0.00 |
| 12/9/2016 | | $213.20 | | Modified Payment | Oct-16 | $254.84 | | $213.20 | | | | $48,928.47 | | $0.00 | $91.24 | $0.00 |
| 12/9/2016 | | | | Shorted Escrow Amount | Oct-16 | $254.84 | | | ($41.64) | | | $48,928.47 | | $0.00 | $91.24 | $0.00 |
| 12/9/2016 | | $86.80 | | Modified Payment | Nov-16 | $254.84 | | $86.80 | | | | $48,928.47 | | $0.00 | $91.24 | $0.00 |
| 12/9/2016 | | | | Shorted Escrow Amount | Nov-16 | $254.84 | | | ($168.04) | | | $48,928.47 | | $0.00 | $91.24 | $0.00 |
| 12/12/2016 | | | $0.47 | Interest on Advances | | $254.84 | | | | $0.47 | | $48,928.47 | | $0.00 | $91.71 | $0.00 |
| 12/13/2016 | | | $15.00 | PROP INSPECTION | | $254.84 | | | | $15.00 | | $48,928.47 | | $0.00 | $106.71 | $0.00 |
| 12/14/2016 | | | ($15.00) | PROP INSPECTION | | $254.84 | | | | ($15.00) | | $48,928.47 | | $0.00 | $91.71 | $0.00 |
| 12/21/2016 | $254.84 | | | Monthly Payment | | $509.68 | | | | | | $48,928.47 | | $0.00 | $91.71 | $0.00 |
| 1/6/2017 | | $500.00 | | Custom Payment | Nov-16 | $509.68 | | | | | $500.00 | $48,928.47 | | $0.00 | $91.71 | $500.00 |
| 1/9/2017 | | $0.00 | | Custom Payment | Nov-16 | $254.84 | | $168.04 | | | ($168.04) | $48,928.47 | | $0.00 | $91.71 | $331.96 |
| 1/9/2017 | | | | Shorted Escrow Amount | Nov-16 | $254.84 | | | ($86.80) | | | $48,928.47 | | $0.00 | $91.71 | $331.96 |
| 1/10/2017 | | | ($77.12) | BORROWER FUNDS | | $254.84 | | | | ($77.12) | | $48,928.47 | | $0.00 | $14.59 | $331.96 |
| 1/10/2017 | | $0.00 | | Custom Payment | Dec-16 | $0.00 | | $254.84 | | $77.12 | ($331.96) | $48,928.47 | | $0.00 | $14.59 | $0.00 |
| 1/11/2017 | | | $0.44 | Interest on Advances | | $0.00 | | | | $0.44 | | $48,928.47 | | $0.00 | $15.03 | $0.00 |
| 1/21/2017 | $254.84 | | | Monthly Payment | | $254.84 | | | | | | $48,928.47 | | $0.00 | $15.03 | $0.00 |
| 2/9/2017 | | $275.00 | | Modified Payment | Jan-17 | $0.00 | | $275.00 | | | | $48,928.47 | | $0.00 | $15.03 | $0.00 |
| 2/21/2017 | $265.03 | | | Monthly Payment | | $265.03 | | | | | | $48,928.47 | | $0.00 | $15.03 | $0.00 |
| 3/6/2017 | | | $4.52 | MOD PMT SHORTAGE | | $265.03 | | | | $4.52 | | $48,928.47 | | $0.00 | $19.55 | $0.00 |
| 3/6/2017 | | $260.00 | | Modified Payment | Feb-17 | $0.00 | | $264.52 | | ($4.52) | | $48,928.47 | | $0.00 | $19.55 | $0.00 |
| 3/6/2017 | | | | Shorted Escrow Amount | Feb-17 | $0.00 | | | ($0.51) | | | $48,928.47 | | $0.00 | $19.55 | $0.00 |
| 3/21/2017 | $265.03 | | | Monthly Payment | | $265.03 | | | | | | $48,928.47 | | $0.00 | $19.55 | $0.00 |
| 4/10/2017 | | $300.00 | | Modified Payment | Mar-17 | $0.00 | | $300.00 | | | | $48,928.47 | | $0.00 | $19.55 | $0.00 |
| 4/21/2017 | $265.03 | | | Monthly Payment | | $265.03 | | | | | | $48,928.47 | | $0.00 | $19.55 | $0.00 |
| 5/15/2017 | | $275.00 | | Modified Payment | Apr-17 | $0.00 | | $275.00 | | | | $48,928.47 | | $0.00 | $19.55 | $0.00 |
| 5/21/2017 | $275.22 | | | Monthly Payment | | $275.22 | | | | | | $48,928.47 | | $0.00 | $19.55 | $0.00 |
| 6/12/2017 | | $300.00 | | Modified Payment | May-17 | $0.00 | | $300.00 | | | | $48,928.47 | | $0.00 | $19.55 | $0.00 |
| 6/21/2017 | $275.22 | | | Monthly Payment | | $275.22 | | | | | | $48,928.47 | | $0.00 | $19.55 | $0.00 |
| 7/17/2017 | | $280.00 | | Modified Payment | Jun-17 | $0.00 | | $280.00 | | | | $48,928.47 | | $0.00 | $19.55 | $0.00 |
| 7/21/2017 | $275.22 | | | Monthly Payment | | $275.22 | | | | | | $48,928.47 | | $0.00 | $19.55 | $0.00 |
| 8/21/2017 | $285.42 | | | Monthly Payment | | $560.64 | | | | | | $48,928.47 | | $0.00 | $19.55 | $0.00 |
| 9/13/2017 | | | $15.00 | PROP INSPECTION | | $560.64 | | | | $15.00 | | $48,928.47 | | $0.00 | $34.55 | $0.00 |
| 9/21/2017 | $438.17 | | | Monthly Payment | | $998.81 | | | | | | $48,928.47 | | $0.00 | $34.55 | $0.00 |
| 9/27/2017 | | | $89.00 | PROP VALUATION | | $998.81 | | | | $89.00 | | $48,928.47 | | $0.00 | $123.55 | $0.00 |
| 9/28/2017 | | | ($89.00) | PROP VALUATION | | $998.81 | | | | ($89.00) | | $48,928.47 | | $0.00 | $34.55 | $0.00 |
| 10/3/2017 | | $275.22 | | Modified Payment | Jul-17 | $723.59 | | $275.22 | | | | $48,928.47 | | $0.00 | $34.55 | $0.00 |
| 10/3/2017 | | $74.78 | | Modified Payment | Aug-17 | $723.59 | | $74.78 | | | | $48,928.47 | | $0.00 | $34.55 | $0.00 |
| 10/3/2017 | | | | Shorted Escrow Amount | Aug-17 | $723.59 | | | ($210.64) | | | $48,928.47 | | $0.00 | $34.55 | $0.00 |
| 10/11/2017 | | | $0.02 | Interest on Advances | | $723.59 | | | | $0.02 | | $48,928.47 | | $0.00 | $34.57 | $0.00 |
| 10/21/2017 | $438.33 | | | Monthly Payment | | $1,161.92 | | | | | | $48,928.47 | | $0.00 | $34.57 | $0.00 |
| 10/23/2017 | | | $15.00 | PROP INSPECTION | | $1,161.92 | | | | $15.00 | | $48,928.47 | | $0.00 | $49.57 | $0.00 |
| 11/21/2017 | $442.58 | | | Monthly Payment | | $1,604.50 | | | | | | $48,928.47 | | $0.00 | $49.57 | $0.00 |
| 12/6/2017 | | $210.64 | | Modified Payment | Aug-17 | $1,319.08 | | $210.64 | | | | $48,928.47 | | $0.00 | $49.57 | $0.00 |
| 12/6/2017 | | | | Shorted Escrow Amount | Aug-17 | $1,319.08 | | | ($74.78) | | | $48,928.47 | | $0.00 | $49.57 | $0.00 |
| 12/6/2017 | | $189.36 | | Modified Payment | Sep-17 | $1,319.08 | | $189.36 | | | | $48,928.47 | | $0.00 | $49.57 | $0.00 |
| 12/6/2017 | | | | Shorted Escrow Amount | Sep-17 | $1,319.08 | | | ($248.81) | | | $48,928.47 | | $0.00 | $49.57 | $0.00 |
| 12/21/2017 | $444.01 | | | Monthly Payment | | $1,763.09 | | | | | | $48,928.47 | | $0.00 | $49.57 | $0.00 |
| 1/21/2018 | $445.45 | | | Monthly Payment | | $2,208.54 | | | | | | $48,928.47 | | $0.00 | $49.57 | $0.00 |
| 2/21/2018 | $453.74 | | | Monthly Payment | | $2,662.28 | | | | | | $48,928.47 | | $0.00 | $49.57 | $0.00 |
| 3/14/2018 | | | $15.00 | PROP INSPECTION | | $2,662.28 | | | | $15.00 | | $48,928.47 | | $0.00 | $64.57 | $0.00 |
| 3/21/2018 | $455.21 | | | Monthly Payment | | $3,117.49 | | | | | | $48,928.47 | | $0.00 | $64.57 | $0.00 |
| 4/2/2018 | | | $89.00 | PROP VALUATION | | $3,117.49 | | | | $89.00 | | $48,928.47 | | $0.00 | $153.57 | $0.00 |
| 4/3/2018 | | | ($89.00) | PROP VALUATION | | $3,117.49 | | | | ($89.00) | | $48,928.47 | | $0.00 | $64.57 | $0.00 |
| 4/11/2018 | | | $0.35 | Interest on Advances | | $3,117.49 | | | | $0.35 | | $48,928.47 | | $0.00 | $64.92 | $0.00 |
| 4/20/2018 | | | $15.00 | PROP INSPECTION | | $3,117.49 | | | | $15.00 | | $48,928.47 | | $0.00 | $79.92 | $0.00 |
| 4/21/2018 | $455.57 | | | Monthly Payment | | $3,573.06 | | | | | | $48,928.47 | | $0.00 | $79.92 | $0.00 |

# EXHIBIT C (Page 5 of 23)

| | | | | | | | | | | | | | | | | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 5/11/2018 | | | $0.41 | Interest on Advances | | $3,573.06 | | | | $0.41 | | $48,928.47 | | $0.00 | $80.33 | $0.00 |
| 5/21/2018 | $462.47 | | | Monthly Payment | | $4,035.53 | | | | | | $48,928.47 | | $0.00 | $80.33 | $0.00 |
| 6/11/2018 | | | $0.46 | Interest on Advances | | $4,035.53 | | | | $0.46 | | $48,928.47 | | $0.00 | $80.79 | $0.00 |
| 6/21/2018 | $462.47 | | | Monthly Payment | | $4,498.00 | | | | | | $48,928.47 | | $0.00 | $80.79 | $0.00 |
| 7/11/2018 | | | $0.44 | Interest on Advances | | $4,498.00 | | | | $0.44 | | $48,928.47 | | $0.00 | $81.23 | $0.00 |
| 7/21/2018 | $462.57 | | | Monthly Payment | | $4,960.57 | | | | | | $48,928.47 | | $0.00 | $81.23 | $0.00 |
| 8/13/2018 | | | $0.48 | Interest on Advances | | $4,960.57 | | | | $0.48 | | $48,928.47 | | $0.00 | $81.71 | $0.00 |
| 9/11/2018 | | | $0.11 | Interest on Advances | | $4,960.57 | | | | $0.11 | | $48,928.47 | | $0.00 | $81.82 | $0.00 |
| 9/12/2018 | | | ($0.11) | Interest on Advances | | $4,960.57 | | | | ($0.11) | | $48,928.47 | | $0.00 | $81.71 | $0.00 |

**Ongoing Post Petition Payment as of 09/21/2018**

| | |
|---|---|
| Principal & interest due: | $469.44 |
| Monthly escrow: | $0.00 |
| Private mortgage insurance: | $0.00 |
| Total monthly payment: | $469.44 |

The entity which has the right to foreclose is DLJ Mortgage Capital, Inc. by virtue of being the holder and owner of the note.

Case 6:18-bk-17028-WJ Claim 23 Filed 10/29/18 Desc Main Document Page 7 of 23

M&H File No. CA-18-148417

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:
411 Ivy Street
San Diego, CA 92101

A true and correct copy of the foregoing document entitled (*specify*): **PROOF OF CLAIM** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**: Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) 10/29/2018, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

| DEBTOR(S) COUNSEL | TRUSTEE | US TRUSTEE |
|---|---|---|
| Jenny L Doling | Rod Danielson (TR) | ustpregion16.rs.ecf@usdoj.gov |
| jd@dshapc.com | notice-efile@rodan13.com | |

☐ Service information continued on attached page

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) 10/29/2018, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**DEBTOR(S)**
Maximiliano Sanchez, 78845 Villeta Drive, La Quinta, CA 92253

Rosa Sylvia Garcia, 78845 Villeta Drive, La Quinta, CA 92253

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _______________, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 10/29/2018 | Hue Banh | /s/ Hue Banh |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

**EXHIBIT C (Page 7 of 23)**

*June 2012* **F 9013-3.1.PROOF.SERVICE**

RECORDING REQUESTED BY
FIDELITY NATIONAL TITLE

WHEN RECORDED MAIL TO

Nationwide Title Clearing, Inc.
ATTN: Dusti Woodbury - CIT Unit
2100 Alt 19 North
Palm Harbor, FL 34683

MIN: [redacted]

DOC # 2007-0497808
08/01/2007 08:00A Fee:27.00
Page 1 of 7
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|---|---|---|---|---|---|---|
| 1 | | | 7 | | 1 | | | | |
| M | A | L | 465 | 426 | PCOR | NCOR | SMF | NCHG | EXAM |
| | | | | | T: | | CTY | UNI | 029 |

27

T 029

# DEED OF TRUST

| TRUSTOR(S) Name(s) and Address(es) | ROSA S GARCIA<br>78845 VILLETA DRIVE<br>LA QUINTA, CA 92253 ("Borrower") | Lender Name and Address | The CIT Group/Consumer Finance, Inc. (a Delaware Corporation)<br>800 E COLORADO BLVD PASADENA<br>PASADENA, CA 91101 ("Lender")<br>LICENSE NO.: 603 5184 |
|---|---|---|---|
| | | Beneficiary Name and Address | MERS<br>P.O. Box 2026<br>Flint, MI 48501-2026 ("Beneficiary") |

TRUSTEE'S NAME AND ADDRESS
FIDELITY NATIONAL TITLE, 950 HAMPSHIRE ROAD, WESTLAKE VILLAGE, CA 91361

| LOAN NUMBER | DATE | PRINCIPAL BALANCE | FINAL PAYMENT DATE |
|---|---|---|---|
| [redacted] | 07/25/07 | $50,000.00 | 08/20/32 |

Borrower owes Lender the principal sum shown in the Principal Balance box above, which is the maximum amount of loan indebtedness that Borrower will have outstanding at any time, exclusive of interest thereon. This debt is evidenced by Borrower's Home Equity Line of Credit Agreement dated the same date as this Deed of Trust ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on the Final Payment Date shown above. **The beneficiary of this Deed of Trust is MERS** (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. This Deed of Trust secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications; (b) the payment of all other sums, with interest, advanced under paragraph 2 to protect the security of this Deed of Trust; and (c) the performance of Borrower's covenants and agreements under this Deed of Trust and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in RIVERSIDE County, California:

**SEE ATTACHED LEGAL DESCRIPTION 'EXHIBIT A'**

which has the address of 78845 VILLETA DRIVE (Street), LA QUINTA (City)
California 92253 (Zip Code) ("Property Address");

Together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Deed of Trust. All of the foregoing is referred to in this Deed of Trust as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required to Lender including, but not limited to, releasing and canceling this Deed of Trust.

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property. Borrower warrants that the lien created by this Deed of Trust is a valid and enforceable lien subordinate only to easements, liens and restrictions of record as of the date of this Deed of Trust, and that during the entire term of the indebtedness

07/25/07 14:48 2054122
2-2191A (4/04) California (HELOC)

Initial(s) X RAG X ________

secured by this Deed of Trust Borrower will not permit this lien to become subordinate to anything else. Borrower warrants and will defend the title to the Property against all claims and demands except such easements, liens and restrictions of record as of the date of this Deed of Trust.

Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2 Taxes-Liens-Insurance-Maintenance.** Borrower will pay, when they are due and payable, all taxes, liens or security titles (legal claims), assessments, obligations, water rates and any other charges against the Property, whether superior or inferior to the lien or security title of this Deed of Trust, including paying Lender any costs, including outside attorney's fees incurred by Lender in defending any lawsuit by prior or later lienholders or security title holders on the Property, maintain hazard insurance and earthquake insurance on the Property in Lender's favor in a form and amount satisfactory to Lender and maintain and keep the Property in good repair at all times during the term of this Deed of Trust pursuant to paragraph 4 below. If Borrower fails to maintain the Property in good repair, Lender may enter the Property and make those repairs necessary to maintain the Property in good repair. Lender may pay any such tax, lien or security title, assessment, obligation, water rates, premium or other charge necessary to maintain the Property in good repair, or purchase such insurance in Lender's own name, if Borrower fails to do so. The amount Lender pays will be due and payable to Lender on demand, will bear an interest charge at the interest rate set forth in the Note secured by this Deed of Trust if permitted by law, or, if not, at the highest lawful interest rate, will be an additional lien or security title on the Property and may be enforced and collected in the same manner as the other obligations secured by this Deed of Trust. The insurance carrier providing the insurance referred to above will be chosen by Borrower subject to Lender's approval which will not be unreasonably withheld. All insurance policies and renewals must be acceptable to Lender and must include a standard mortgagee clause. Lender will have the right to hold the policies and renewals. If Lender requires, Borrower will promptly give to Lender all receipts of paid premiums and renewal notices. In the event of a loss, Borrower will give prompt notice to the insurance carrier and Lender. Lender may file a proof of loss if not made promptly by Borrower. Proceeds from all insurance required by Lender or obtained by Borrower will be applied to the restoration or repair of the Property damaged or, at Lender's option, the insurance proceeds will be applied to the sums secured by this Deed of Trust, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within ten (10) days, a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Deed of Trust, whether or not then due. The ten (10)-day period will begin when the notice is given.

**3. Application of Payments.** Unless applicable law provides otherwise, payments shall be first applied to any prepayment charges, then to any costs and expenses incurred under this Deed of Trust, then to interest then due and then to principal.

**4. Preservation and Maintenance of Property; Leaseholds.** Borrower shall not destroy, damage or substantially change the Property, allow the Property to deteriorate or commit waste. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

**5. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain the insurance in effect until such time as the requirement for the insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

**6. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Deed of Trust, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property, unless Borrower and Lender otherwise agree in writing, the sums secured by this Deed of Trust shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Properly immediately before the taking. Any balance shall be paid to Borrower.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Deed of Trust, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the payments referred to in paragraph 1 or change the amount of such payments.

*GARCIA, ROSA*
*07/25/07 14:48 2054122*
*2-2191B*

*Initial(s) X* RAG *X* ________

**8. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**9. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Deed of Trust shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 15. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Deed of Trust but does not execute the Note: (a) is co-signing this Deed of Trust only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Deed of Trust; (b) is not personally obligated to pay the sums secured by this Deed of Trust; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Deed of Trust or the Note without that Borrower's consent.

**10. Loan Charges.** If the loan secured by this Deed of Trust is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**11. Legislation Affecting Lender's Rights.** If enactment or expiration of applicable laws has the effect of rendering any provision of the Note or this Deed of Trust unenforceable according to its terms, Lender, at its option, may require immediate payment in full of all sums secured by this Deed of Trust and may invoke any remedies permitted by paragraph 17.

**12. Notices.** Any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. Borrower requests that copies of any notices of default and sale be sent to Borrower's address which is the Property Address unless otherwise indicated on the front page of this Deed of Trust. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**13. Governing Law; Severability.** This Deed of Trust shall be governed by California and applicable federal law. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision. To this end the provisions of this Deed of Trust and the Note are declared to be severable.

**14. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Deed of Trust.

**15. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

**16. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Deed of Trust discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Deed of Trust; or (b) entry of a judgment enforcing this Deed of Trust. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Deed of Trust and the Note had no acceleration occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Deed of Trust, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien or security title of this Deed of Trust, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unchanged. Upon reinstatement by Borrower, this Deed of Trust and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 15.

**17. Default.** If Borrower defaults in paying any part of the indebtedness secured by this Deed of Trust or if Borrower defaults in any other way, the entire unpaid principal and any accrued and unpaid interest thereon and any other amounts Borrower then owes under the loan secured by this Deed of Trust will become due, if Lender desires.

Lender may execute and record, in the Office of the Recorder of each county in which the Property or some part is located, a written notice of the default and Lender's election to sell the Property secured by this Deed of Trust. Lender may rescind the notice before the Trustee's sale by executing and recording a notice of rescission, which will cancel any prior notice of default and of any acceleration of the maturity of the indebtedness affected by any prior notice of default. Lender's rescission of a notice of default will not waive any existing or subsequent default nor impair Lender's right to execute any notice of default and election to cause the Property to be sold nor otherwise affect any of Lender's rights under this Deed of Trust.

*GARCIA, ROSA*
*07/25/07 14:48 2054122*
*2-2191C*

*Initial(s)* X [initials] X ______

After the time required by law following the recording of the notice of default has elapsed, the Trustee may give notice of sale as then required by law and, without demand on Borrower, sell the real estate at the time and place fixed in the notice of sale either as a whole or in separate parcels in whatever order the Trustee determines, at public auction to the highest bidder for cash. The Trustee may postpone the sale from time to time by making a public announcement at the original or previously postponed time and place of sale, and without further notice, the Trustee may make such sale at the time to which the sale may be so postponed.

The Trustee will deliver to the purchaser a Trustee's deed conveying the real estate sold, but without any covenant of warranty, express or implied. Any person, including Lender, Borrower or the Trustee, may bid at the sale and purchase the real estate. The proceeds of the sale will be applied by the Trustee first, to the payment of all fees and expenses of the Trustee and of this trust; second to all sums expended by Lender under the terms of this Deed of Trust which have not been repaid, with accrued interest at the amount allowed by law; third to all other sums secured by this Deed of Trust; and any remainder to the persons legally entitled to it.

**18. Lender in Possession.** Upon acceleration under paragraph 17 or abandonment of the Property, Lender (in person, by agent or by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. Any rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust.

**19. Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request the Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing debt secured by this Deed of Trust to the Trustee. Trustee shall reconvey the Property without warranty. The trustee or Lender may charge a fee for services rendered in connection with the preparation, execution or recordation of a reconveyance, or request for a reconveyance, to the extent allowed by law. Such person or persons shall pay any recordation costs.

**20. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Deed of Trust is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**21. Riders to this Deed of Trust.** If one or more riders are executed by Borrower and recorded together with this Deed of Trust, the covenants and agreements of each rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Deed of Trust as if the rider(s) were a part of this Deed of Trust [Check applicable box(s)]

☐ Adjustable Rate Rider ☐ Condominium Rider ☐ 1-4 Family Rider

☐ Graduated Payment Rider ☐ Planned Unit Development Rider

☒ Request for Copy of Notice of Default ☐ Other(s) [specify]

**22. Statement of Obligation.** Lender may collect a fee not to exceed the maximum amount permitted by law for furnishing a Beneficiary Statement and/or a Payoff Demand Statement as provided by Section 2943 of the Civil Code of California.

**23. Transfer of Servicing.** Pursuant to California Civil Code Section 2937, if the servicing of this Deed of Trust and the indebtedness by which it secures is ever transferred from one servicing agent to another servicing agent, each such servicing agent shall inform the Borrower of the transfer prior to the creation of any obligation on the part of the Borrower to pay the new servicing agent.

*GARCIA, ROSA*
*07/25/07 14:48 2054122*
*2-2191D*

*Initial(s)* X RGA X ________

Case 6:18-bk-17028-WJ Claim 23 Filed 10/29/18 Desc Main Document Page 12 of 23

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Deed of Trust and in any rider(s) executed by Borrower and recorded with it.

Rosa S Garcia (Seal) -Borrower
ROSA S GARCIA

_____ (Seal) -Borrower

_____ (Seal) -Borrower

_____ (Seal) -Borrower

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

On July 25, 2007 before me, Stephanie Deans, Notary Public (Notary Name and Title)

personally appeared ROSA S GARCIA

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature Stephanie Deans

STEPHANIE DEANS
Commission # 1588712
Notary Public — California
Los Angeles County
My Comm. Expires Jun 20, 2009

(Notarial Seal)

REQUEST FOR RECONVEYANCE

TO TRUSTEE:

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Dated: _____

07/25/07 14:48 2054122
2-2191E

Case 6:18-bk-17028-WJ Claim 23 Filed 10/29/18 Desc Main Document Page 13 of 23

**LEGAL DESCRIPTION**

**EXHIBIT "A"**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LA QUINTA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

Lot 151, of Tract No. 23269, in the City of La Quinta, County of Riverside, State of California, as per map recorded in Book 205, Pages 86 to 94, inclusive, of Miscellaneous Maps, in the office of the County Recorder of said County.

APN: [redacted]

Case 6:18-bk-17028-WJ Claim 23 Filed 10/29/18 Desc Main Document Page 14 of 23

Government Code 27361.7

I Certify Under Penalty of Perjury That The Notary Seal On The Document To Which This Statement Is Attached Reads As Follows:

Name of Notary: Stephanie Deans

Commission No: 1588712

Date Commission Expires: Jun 20, 2009

County: Los Angeles

By: [signature]

Date: 8-1-07



# HOME EQUITY LINE OF CREDIT AGREEMENT AND DISCLOSURE STATEMENT

BORROWER(S) NAME(S) AND ADDRESS:
ROSA S. GARCIA

78845 VILLETA DRIVE
LA QUINTA, CA 92253

LENDER'S NAME AND ADDRESS:

THE CIT GROUP/CONSUMER FINANCE, INC.
800 E COLORADO BLVD PASADENA

PASADENA, CA 91101

MIN: [redacted]

ACCOUNT NO.: [redacted]
DATE: 07/25/07

CREDIT LIMIT: $ 50,000.00

FINAL PAYMENT DATE (no later than): 08/20/32

This is the Agreement ("Agreement") that governs my Home Equity Line of Credit Account ("Account") with you, The CIT Group/Consumer Finance, Inc. The words "I", "me" and "my" refer to the borrower ("Borrower") signing this Agreement. If more than one Borrower signs this Agreement, the words "I", "me", "my" and "us" refer to all who sign, separately and together. The words "you" and "your" refer to The CIT Group/Consumer Finance, Inc.

**1. LINE OF CREDIT.**

A. The scheduled term of my Account is 25 years. During the first 10 years (the "Draw Period") of the 25-year loan term, I will be permitted, subject to the limitations contained in this Agreement, to borrow money from time to time in amounts which, in the aggregate, do not exceed my Credit Limit shown above by any method set forth in this paragraph. I must take an initial loan advance of no less than $5000.00. During the Draw Period, I must make monthly payments as described in paragraph 3.A. below. After the Draw Period expires, I will no longer be permitted to obtain additional loan advances from my Account. During the last 15 years (the "Repayment Period") of the 25 year loan term, I must repay the outstanding balance on my Account as described in paragraph 3.B. below. You will make loan advances by (i) honoring drafts which you have provided to me and which I have written in amounts of $250.00 or more ("Home Equity Checks"), including my initial advance of $5,000.00; (ii) providing me with a cashier's check for no less than $250.00 drawn on a bank, at my request and in accordance with procedures you establish; (iii) paying any closing cost charges described and disclosed in paragraph 7 below; (iv) paying any unpaid taxes, assessments, property insurance or other sums as provided under this Agreement or the Deed of Trust which secures my obligations under this Agreement and encumbers my real property described in paragraph 8 below, dated as of the same date as this Agreement, from me to you (the "Mortgage"); and (v) any other additional method or procedure you establish. You shall not be required to make any loan advances to me if you exercise your right to suspend or terminate my Account upon certain conditions or events described in this Agreement. You will not make any loan advances before the fourth business day following the signing of this Agreement or after the expiration of the Draw Period. I may not access my Account by any other method.

B. I understand that my Home Equity Checks will be drawn on a bank which will act as your disbursement agent. My Home Equity Check will be honored only if you, subject to the terms of this Agreement, make a loan advance to honor my Home Equity Check. I agree that the Home Equity Checks are only a means to obtain loan advances and that the bank acting as your disbursement agent has not opened a checking account for me, and I cannot deposit funds into this account.

**2. OBLIGATION TO PAY.**

A. I promise to pay to you or your order, when and as due, all loan advances made under this Agreement, plus all unpaid finance charges, insurance premiums, collection costs and other charges owed to you now or in the future. I agree to make my payments in the manner specified in my periodic statement, and if I do so, such payments will be credited as of the day of receipt.

B. I may pay all or any part of my outstanding balance at any time, without penalty. However, I must pay you each month at least the "Current Minimum Payment" for each billing cycle plus any "Amount Past Due" upon the receipt of my periodic statement. I will not make any Account payments with my Home Equity Checks.

C. I understand that each Account payment check I send you that is intended to reduce the principal balance will not be available for additional loan advances on my credit line until the 14th calendar day after the day you have posted my check. Such payments will be credited as of the date you receive my payment. You do not process payments on Saturdays, Sundays, or bank holidays, and payment checks received on such days will be considered received by you and posted to my account on the next business day.

This loan is made pursuant to Article 5 of the California Finance Lenders law, of the California Financial Code. I acknowledge that the proceeds of any advances I obtain under this Agreement will be used solely for personal, family, or household purposes.

07/25/07 14:48 [redacted]

2-2144A (5/06) California HELOC Agreement

Case 8:18-bk-17028-WJ Claim 23 Filed 10/29/18 Desc Main Document Page 16 of 23

**3. CALCULATION OF MINIMUM MONTHLY PAYMENTS DURING DRAW PERIOD AND REPAYMENT PERIOD.**

A. During the Draw Period, my "Current Minimum Payment" equals the finance charges that have accrued at the Daily Periodic Rate for the billing cycle on the outstanding balance for the billing cycle covered by my periodic statement. Payment of the "Current Minimum Payment" will not reduce the outstanding principal balance on my Account during the Draw Period. In addition, I must pay to you immediately any "Amount Past Due" plus any amounts on my Account which exceed my Credit Limit under this Agreement, without demand or notice from you.

B. During the Repayment Period, my "Current Minimum Payment" will be equal to the greater of (a) the sum of 1/180th of the principal balance that was outstanding at the end of the Draw Period plus the finance charge I owe on the Account at the Daily Periodic Rate for the billing cycle covered by my periodic statement, or (b) $50. However, if my outstanding balance is less than $50, I must pay you the full outstanding balance. I must pay to you immediately any "Amount Past Due" on my Account.

**4. CREDIT LIMIT.** My Credit Limit under this Agreement is shown above (my "Credit Limit"). I promise not to write Home Equity Checks or obtain loan advances in any other way permitted by this Agreement, which will cause my unpaid loan balance to exceed my Credit Limit. You can refuse to make loan advances or honor Home Equity Checks that would cause my unpaid loan balance to exceed my Credit Limit.

**5. ANNUAL PERCENTAGE RATE.**

A. The initial Daily Periodic Rate and the initial Annual Percentage Rate disclosed in this paragraph 5.A. are "discounted" initial rates. This means that these rates are lower than the rates which would be in effect if the formula set forth in paragraph 5.B. below had been used. The initial Daily Periodic Rate is 0.02055 %. The initial ANNUAL PERCENTAGE RATE is 7.500 %. If the initial rates had been determined using the formula set forth in paragraph 5.B. below, the initial Daily Periodic Rate would be 0.03014 % and the ANNUAL PERCENTAGE RATE would be 11.000 % %. The initial discounted rate will be in effect from the date of this Agreement until the end of the THIRD billing cycle. Thereafter, the Daily Periodic Rate and the Annual Percentage Rate will be determined using the formula set forth in paragraph 5.B. below.

B. The method of calculating the Annual Percentage Rate applies to both the Draw Period and the Repayment Period, but does not reflect any finance charge not calculated based on the Daily Periodic Rate. My Annual Percentage Rate may increase or decrease beginning with the first billing cycle after my "discounted" rate has expired, according to the following formula:

The ANNUAL PERCENTAGE RATE for each billing cycle will be equal to the "Index" plus a "Margin" of 2.750 % percentage points. The "Index" will be the "Prime Rate" (the highest rate in the case of split rates) as published in the "Money Rates" table of The Wall Street Journal as of 7 days prior to the end of the billing cycle immediately preceding the current billing cycle (or as of the immediately preceding business day if such day is a non-business day). Each change in my Daily Periodic Rate and Annual Percentage Rate, if any, will take effect automatically on the first day of the billing cycle, without prior notice to me, and will apply to new loan advances and to the outstanding balance in my Account. The new Annual Percentage Rate and Daily Periodic Rate will apply to my then existing unpaid balance and all new loan advances I obtain until my Annual Percentage Rate and Daily Periodic Rate change again. The Daily Periodic Rate at any time equals the ANNUAL PERCENTAGE RATE divided by 365. If The Wall Street Journal ceases to publish the Index, you will choose a substitute index that is based upon comparable information and, if necessary, a substitute margin, so that the change in the index results in substantially the same rate as required under the previous index.

C. The Annual Percentage Rate is a simple interest rate. The Annual Percentage Rate includes only interest and not other costs. The ANNUAL PERCENTAGE RATE will never be greater than 18% during the entire term of my Account or the highest rate permitted by law, whichever is lower.

D. If the Daily Periodic Rate (and the corresponding Annual Percentage Rate) increases, I will have to pay an additional finance charge. Also, the "Current Minimum Payment" on my periodic statement may increase.

**6. FINANCE CHARGE.**

A. (1) Finance charge calculated on Daily Periodic Rate applicable to billing cycle. The finance charge begins to accrue on my Account from the time the loan advance is posted to my Account. The finance charge will continue to accrue for the period any loan advance creates an unpaid balance. There is no free ride period.

(2) You compute the finance charge on my Account by applying the Daily Periodic Rate to the "Average Daily Balance" of my Account (including current transactions). To determine the finance charge for any billing cycle, the "Average Daily Balance" is multiplied by the Daily Periodic Rate, then this product is multiplied by the number of days in the billing cycle.

(3) To calculate the "Average Daily Balance" in my Account, you take the beginning balance of my Account each day, add any new loan advances and subtract any payments or credits and unpaid finance charges. This gives you the Daily Balance. Then you add up all the Daily Balances for the billing cycle and divide the total by the number of days in the billing cycle. This gives you the "Average Daily Balance".

B. Finance Charge not calculated based on Daily Periodic Rate. I have agreed to pay a Prepaid FINANCE CHARGE for services rendered by a mortgage broker in the amount of $ 1,260.00 , which was determined in accordance with my agreement with my mortgage broker.

7. **CLOSING COSTS.** I must pay various closing costs relating to the opening of my Account at time of settlement. The costs may be paid in cash, or I may finance part or all of them with an advance on my Account. The costs (including **FINANCE CHARGES**) that will be charged to open my Account are included on the attached Settlement Statement which is incorporated into and deemed to supplement this Home Equity Line of Credit Agreement and Disclosure Statement.

8. **REAL PROPERTY SECURITY.** In order to secure the payment of all loan advances I obtain and the performance of all promises I make in this Agreement, I and all of the owners (or other persons who have an interest in the property arising by operation of law, which interest can be legally waived) of the real property are giving you a Deed of Trust covering my dwelling located at 78545 Villeta Drive, La Quinta, CA 92253 (the "Real Property"). The Deed of Trust is security for my obligations under this Agreement. The Deed of Trust will not secure any amount in excess of my Credit Limit.

9. **PERIODIC STATEMENTS.** For any billing cycle in which I have an outstanding balance or a credit balance greater than $1.00, or during which a finance charge or other charge has been imposed, you will send me a periodic statement. The periodic statement will show all Account activity during the billing cycle and contain other important information, including my "New Balance", my Annual Percentage Rate, the amount of my "Current Minimum Payment" and the place and manner of making payments.

10. **PROPERTY INSURANCE.** I agree to obtain and maintain property insurance against loss or damage to the Real Property, in such amounts against such risks (including, but not limited to, flood damage insurance, if required), and according to such terms as you may require in the Deed of Trust or otherwise. I may obtain property insurance from any company of my choice, except that you can refuse to accept an insurer for reasonable cause. I must name you as loss payee on such coverage. If the amount of the premiums for property insurance increases at any time during the term of my Account, I agree to pay any such increase(s).

11. **YOUR RIGHTS TO TEMPORARILY SUSPEND MY LOAN ADVANCES OR REDUCE MY CREDIT LIMIT.**

A. You may take the actions listed in paragraph 11.B. below during the period that any of the following events or conditions occur:

(1) the value of the Real Property declines significantly below its appraised value for the purposes of this Account;

(2) you reasonably believe that I will not be able to meet the repayment requirements under my Agreement due to a material change in my financial circumstances, including, but not limited to, the following:

a. my general failure to pay my debts as they become due;
b. a large increase in my indebtedness;
c. a voluntary or involuntary application for my relief any bankruptcy or insolvency law;
d. an adverse change in my credit standing;
e. I am no longer creditworthy;
f. a significant reduction in my income; or
g. the sole borrower obligated on the Account dies.

(3) I am in default of any material obligation of this Agreement, including, but not limited to:

a. failing to provide you with updated financials or credit information or other information or documents you reasonably request;
b. refusing to allow you or your agent access to the Real Property to inspect it or to perform an appraisal;
c. failing to occupy the Real Property as my primary dwelling or moving out of the Real Property;
d. allowing any of the events or conditions listed in subparagraphs 1, 2, 3, 4, 5, 6, 7, 8, and 10 in Paragraph 12.A. below to occur;
e. allowing a judgment to be filed against me;
f. committing waste or otherwise destructively using or failing to maintain the Real Property;
g. breaking any promise in the Deed of Trust;
h. making a payment on my Account with my Home Equity Checks;
i. exceeding my Credit Limit; or
j. using the Real Property for any illegal purpose.

(4) government action prevents you from imposing the Annual Percentage Rate provided in this Agreement or impairs the priority of your Mortgage such that the value of the Mortgage is less than 120 percent of the Credit Limit; or

(5) a government authority has notified you that continued loan advances would constitute an unsafe business practice.

B. During the period in which a condition described in paragraph 11.A. above exists, you may refuse to make any additional loan advances or reduce my Credit Limit, or do both. You will mail or deliver written notice to me after you suspend my right to obtain additional loan advances or reduce my Credit Limit and this notice will describe the specific reasons for your action. You are obligated to reinstate my right to obtain additional loan advances during the Draw Period when the condition(s) which caused the suspension or reduction have been cured or have changed, provided I have notified you in writing, explaining in detail and documenting how the condition(s) have been cured or have changed and no new condition(s) under paragraph 11.A. above or 12.A. below have occurred.

C. Before reinstating my right to obtain loan advances, or restoring my Credit Limit, you may conduct such searches, verifications and evaluations (such as credit reports, appraisals and lien searches) as you deem appropriate, and I promise to reimburse you on demand for any costs you actually incur for obtaining credit reports and appraisals. You may take those steps to verify that (i) the condition(s) that caused your suspension of my right to obtain loan advances from my Account or reduction of my Credit Limit no longer exist, and (ii) the priority of the lien of your Deed of Trust is not impaired.

D. If more than one Borrower signs this Agreement and any of us request in writing that you cease making loan advances, you may comply with such a request. If any of us sends you a written notice which indicates that any of us does not intend to be obligated for any further loan advances obtained by any of us, you may treat that notice as a request to stop making loan advances, and comply with the request. All of us who have signed this Agreement must join in any request to reinstate the right to obtain loan advances from the Account for such request to be effective. If all such persons subsequently request reinstatement of the loan advances, you must honor such a request unless a condition listed in paragraph 11.A. above or 12.A. below has occurred.

E. If an event or condition described in paragraph 11.A. above occurs which is also an event or condition described in paragraph 12.A. below, your rights and remedies described under paragraph 12.B. below apply, as well as your rights described in this paragraph 11.

**12. YOUR RIGHTS TO TERMINATE AND ACCELERATE MY ACCOUNT AND TAKE OTHER ACTION.**

A. Any of the following events or conditions is an event of default under the Agreement (an "Event of Default"):

(1) I fail to meet the repayment terms of this Agreement, such as my failure to make any payment due to you upon receipt of my periodic statement;

(2) I engage at any time in fraud or material misrepresentation in connection with my Account, whether in any application, in this Agreement or in the Deed of Trust;

(3) I sell or transfer title to the Real Property without first obtaining your written permission except as may be permitted by applicable state or federal law;

(4) I fail to maintain insurance on the Real Property as required under this Agreement or the Deed of Trust;

(5) I act or fail to act and as a result a lien senior to the lien of the Deed of Trust, or any portion of the lien, is filed against the Real Property;

(6) I die and I am not survived by another person obligated as a Borrower under this Agreement;

(7) All or part of the Real Property is taken through eminent domain, condemnation, or similar government taking;

(8) A prior lienholder on the Real Property begins foreclosure under its security document;

(9) The Real Property is used for an illegal purpose which could subject the Real Property to seizure;

(10) I fail to pay taxes on the Real Property;

(11) One of the following events or similar events occur and such event adversely affects the Real Property or your rights in the Real Property such as, but not limited to:

(a) A judgment is filed against me;
(b) I commit waste or otherwise destructively use or fail to maintain the Real Property;
(c) I die and am survived by another person obligated as a Borrower under this Agreement;
(d) I move out of the Real Property; or
(e) I fail to comply with any of the events or conditions listed in subparagraphs B, E, F, or H in paragraph 13 below.

B. If an Event of Default described in paragraph 12.A. above occurs, subject to any notice or other limitation of applicable law, you may do any combination of the following things:

(1) you may terminate my rights to obtain loan advances under this Agreement;

(2) you may declare all sums owing under this Agreement and any other agreement I have made with you to be immediately due and payable;

(3) you may foreclose the Deed of Trust;

(4) you may refuse to pay or honor any of my Home Equity Checks; and

(5) you may take another action permitted by this Agreement, by law or in equity.

**13. MY OTHER IMPORTANT OBLIGATIONS.** I agree that:

A. I will provide you within 15 days of your request with updated financials or credit information or other information or documents that you reasonably request;

B. I will allow you or your agent access to the Real Property to inspect it or to perform an appraisal;

C. I will continue to occupy the Real Property as my primary dwelling;

D. I will not allow any of the events or conditions listed in paragraph 12.A. above to occur;

E. I will comply with all government orders or regulations relating to the use or occupancy of the Real Property;

F. I will pay all of my existing and future debts to you under any existing or future agreement with you and I will pay all of my existing and future debts to my other creditors as they become due and will not allow a creditor to obtain a judgment against me;

G. I have not made and will not make any misrepresentation in connection with my Account whether in my application, in this Agreement, or in the Deed of Trust;

H. I will not permit a receiver, sequestrator, liquidator, trustee, guardian, conservator or other judicial representative to be appointed for me or any of my property or for the Real Property;

I. I will not use or allow use of the Real Property for any illegal purpose;

J. I will not permit a lien to be filed which takes priority over the Deed of Trust for future advances made under this Agreement;

K. I will not break any other promise made in this Agreement or in the Deed of Trust such as:

(1) my promise not to make Account payments with my Home Equity Checks;

(2) my promise not to exceed my Credit Limit; and

(3) my promise not to be in default of the Deed of Trust.

**14. COSTS OF COLLECTION.** I must pay for your reasonable and actual costs of collection, such as your costs and your reasonable attorney's fees. A finance charge will continue to accrue at the Annual Percentage Rate in effect from time to time as provided in this Agreement after I default and before you obtain a judgment against me.

**15. YOUR AND MY RIGHTS TO TERMINATE MY RIGHTS TO OBTAIN LOAN ADVANCES.**

A. Termination by Me. I may terminate my right to obtain loan advances by sending you a written notice which will become effective upon receipt by you. I may suspend my right to obtain loan

advances pursuant to paragraph 11.D. above.

B. Termination by You. You may terminate or suspend my right to future advances under my Account by exercising your termination rights or suspension rights in paragraphs 11 and 12 above.

C. Effect of Termination. Notwithstanding any suspension or termination of my right to obtain future loan advances under this Agreement, I will remain obligated to pay you all amounts which I owe under this Agreement, and to perform all of my obligations under this Agreement and the Mortgage. My obligation to pay you all amounts which I owe under this Agreement includes, but is not limited to, my obligation to pay the "Current Minimum Payment" shown on each monthly periodic statement which you send to me. I may be required to repay all my obligations to you immediately if you exercise your rights under paragraph 12 above. I must return unused Home Equity Checks to you upon termination.

**16. CHANGES TO AGREEMENT.**

A. You may change this Agreement to the extent not prohibited by federal or state law, such as the changes listed as follows:

(1) you may make any change I agree to in writing;

(2) you may make a change which is unequivocally beneficial to me, such as offering me more minimum payment options, extensions or renewals of my Account, reductions in the rate or fees, and additional means to access loan advances;

(3) you may make insignificant changes, such as changing the address to which payments must be sent, name changes, operational changes involving the billing cycle date, the due date of the "Current Minimum Payment", the day of the month on which Index values are measured to determine my rate, and the balance computation method, and

(4) you may make any changes to this Agreement permitted by law if an event under paragraph 12.A. above occurs.

B. You may make the changes described in paragraphs 16.A.(2) and (3) by notifying me of the change. The change will become effective as described in the notice you send me and will apply to amounts I owe when the change becomes effective, as well as to new loan advances.

**17. OTHER PROVISIONS.**

A. Third Parties. This Agreement obligates me and my estate, heirs and personal representatives. This Agreement benefits you and your successors and assigns. You may add or release parties, or permit the addition or substitution of real property collateral that secures this Agreement, or modify, extend or amend this Agreement without in any way affecting my or any non-borrower co-owner's (or persons having an interest arising by operation of law who have signed the Deed of Trust) obligations under this Agreement. My rights under this Agreement belong only to me. I cannot transfer or assign them to anyone else. You may transfer and assign your rights and obligations under this Agreement and the Deed of Trust at any time without my consent.

B. Additional Credit Reports and Appraisals. I authorize you to conduct such searches, verification and evaluations (such as credit reports, appraisals and lien searches) concerning me, the Real Property and the Deed of Trust as you may deem necessary from time to time. I will cooperate in having the Real Property reappraised.

C. Tax Deductibility. I know that I should consult a tax advisor regarding the deductibility of interest and charges.

D. Applicable Law. I agree that this Agreement is to be governed by federal law and, to the extent not preempted by federal law, by the laws of California.

E. Application of Payments. You may apply payments and proceeds of the Real Property in such order as you shall deem advisable or as otherwise required by applicable law.

F. Jurisdiction. I irrevocably consent to the exclusive jurisdiction of the courts of California and/or a United States District Court for a District in California in all actions between you and me. I irrevocably agree to service of process by certified mail, return receipt requested to me at my last address appearing on your records.

G. Failure to Perform. If I violate or fail to perform any term or condition of this Agreement (or the Deed of Trust) you may (but are under no obligation to) perform on my behalf. All costs you incur will be added to the unpaid balance of the Account and a finance charge will be charged at the Annual Percentage Rate in effect from time to time as calculated in this Agreement. I agree to pay these costs and finance charge on demand. Your performance of any of my obligations will not be a waiver of any of your rights or remedies under this Agreement.

H. Waiver of Jury Trial. I waive my right to a jury trial.

I. Complete Understanding of the Parties. There are no oral agreements concerning this Agreement. This Agreement will not be amended or modified orally. If any provision of this Agreement is held to be void or unenforceable, the rest of this Agreement shall remain in effect.

Case 8:18-bk-17028-WJ Claim 23 Filed 10/29/18 Desc Main Document Page 21 of 23

J. Waiver of Notice. I waive presentment, demand, protest, notice of default, nonpayment, and all other notices and formalities in connection with the delivery, acceptance, performance, default or enforcement of this Agreement, except such notices as are required by the Federal Truth in Lending Act and Federal Regulation Z, and such other notices which cannot be waived by law.

K. Meaning of Words. All words in this Agreement will be read to be of such gender and number as the context may require. The section headings in this Agreement are for convenience and do not limit or amend any of the Agreement's provisions. Any list of conditions or events in this Agreement preceded by the phrase "such as" or "including, but not limited to," is not intended as a full or comprehensive list, but merely as a set of examples of such conditions or events. Other conditions or events are intended to be included to the fullest extent permitted under federal and state law, even if different from the listed conditions or events.

L. Payment Marked "Payment in Full". I agree not to submit any checks to you in payment of my Account marked "Payment in Full" unless the amount of the check is sufficient to pay my Account in full as of the date you receive the payment. If I do submit a check to you marked "Payment in Full" for a sum less than the amount necessary to pay my Account in full, you may accept it as a partial payment and will not be bound by the "Payment in Full" notation. I agree that communications concerning a dispute as to amounts owing on my Account, including any checks submitted to you as full satisfaction of my Account, must be sent to the address for Billing Error Inquiries on my periodic statement.

M. Lost or Stolen Checks. If my Home Equity Checks are lost or stolen, I will notify you immediately either by phoning between 8:00 A.M. and 5:00 P.M. CST at (800) 621-1433 or by writing to you at the address for Billing Error Inquiries on my periodic statement.

N. Stopping payments on checks.

(1) If more than one person has signed this Agreement, each of us will be allowed to stop payment on a Home Equity Check even if the person making the stop payment order is not the person who wrote the Home Equity Check. All stop payment orders must be made either by phoning on banking days between 8:00 A.M. and 5:00 P.M. CST at (800) 621-1433 or by writing to you at the address for Billing Error Inquiries on my periodic statement.

(2) My stop payment order must include my Account number, the date of the Home Equity Check, the name of the payee, the exact amount of the check and the preprinted check number shown at the top of the Home Equity Check.

(3) My stop payment order takes effect after you have a reasonable time to record it on my Account. If my stop payment order is oral, I must confirm it in writing or it will be removed after fourteen days. My written order will be effective for six months. After six months, I must renew my written order if I wish it to continue.

O. Returning Checks. My Home Equity Checks will not be returned to me with my monthly statement. If I need a copy of my cancelled Home Equity Checks, I can request it by writing to you at the address for Billing Error Inquiries on my periodic statement.

P. Enforcement. You can accept any late or partial payment or otherwise waive or delay enforcing your rights under this Agreement without losing them or affecting them. You are not obligated to exercise any of your rights or remedies if I default under this Agreement. Your election to exercise any right or remedy does not constitute a waiver of your right to exercise any right, other right or remedy, nor will your failure to exercise a right or remedy following a default prevent your exercise of that right or remedy of any other right or remedy in the event of a subsequent default.

Q. Notices. Except for any notice required under applicable law to be given in another manner, (a) any notice to me provided for in this Agreement shall be given by delivering it or by mailing such notice to me by regular mail, addressed to me at my address set forth on the first page of this Agreement or at such other address as I may designate by written notice to you as provided in this paragraph 17.Q. and (b) any notice to you provided for in this Agreement shall be given by mailing such notice to you by regular mail, addressed to The CIT Group/Consumer Finance, Inc., 715 S. Metropolitan Avenue, Oklahoma City, Oklahoma 73108-2090 or such other address as you may designate by written notice to me as provided in this paragraph 17.Q.

R. Joint and Several Liability. If more than one person signs this Agreement, each of us will be bound by this Agreement and will be jointly and severally liable for amounts advanced under this Agreement.

S. Loan Charges. If a law, which applies to this Agreement and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected in connection with this Agreement exceed the permitted limits then: (i) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (ii) any sums already collected from me which exceeded permitted limits will be refunded to me. You may choose to make this refund by reducing the principal I owe under this Agreement or by making a direct payment to me. If a refund reduces principal, the reduction will be treated as a partial prepayment.

T. Due-On-Sale Clause. The Deed of Trust which secures this Agreement contains the following due-on-sale clause:

> 15. Transfer of the Property or a Beneficial Interest in Borrower. If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

**REFERRED BY BROKER**

**Name:** HOME LENDING CORP/CAPITAL LINE **Broker License No.:** 01235101

**Address:** 23945 CALABASAS RD #205 CALABASAS, CA91302

BY SIGNING BELOW ON THE DATE INDICATED ON THE FIRST PAGE OF THIS AGREEMENT, (1) I AGREE THAT I HAVE READ THIS AGREEMENT, (2) I AGREE AND INTEND TO BE LEGALLY BOUND BY ALL OF ITS TERMS AND CONDITIONS, AND (3) I ALSO ACKNOWLEDGE RECEIVING A COMPLETED COPY OF THE AGREEMENT.

I ALSO ACKNOWLEDGE THAT I RECEIVED A COPY OF YOUR HOME EQUITY EARLY DISCLOSURE ENTITLED, "FEDERAL DISCLOSURES - IMPORTANT TERMS OF THE CIT GROUP/CONSUMER FINANCE, INC. HOME EQUITY LINE OF CREDIT PLAN", THE HOME EQUITY BROCHURE ENTITLED, "WHEN YOUR HOME IS ON THE LINE", TWO COPIES OF A COMPLETED "NOTICE OF RIGHT TO CANCEL MY ACCOUNT" AND ALL OTHER DISCLOSURES REQUIRED TO BE GIVEN TO ME BY YOU BY EITHER STATE OR FEDERAL LAW.

NOTICE TO COSIGNER
(Traducción en Ingl,s Se Requiere Por La Ley)

You are being asked to guarantee this debt. Think carefully before you do. If the borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility.

You may have to pay up to the full amount of the debt if the borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount.

The creditor can collect this debt from you without first trying to collect from the borrower. The creditor can use the same collection methods against you that can be used against the borrower, such as suing you, garnishing your wages, etc. If this debt is ever in default, that fact may become a part of your credit record.

This notice is not the contract that makes you liable for the debt.

AVISO PARA EL FIADOR
(Spanish Translation Required by Law)

Se le est pidiendo que garantice esta deuda. Pi,nselo con cuidado antes de ponerse de acuerdo. Si la persona que ha pedido este pr,stamo no paga la deuda, usted tendr que pagarla. Est, seguro de que usted podr pagar si sea obligado a pagarla y de que usted desea aceptar la responsibilidad.

Si la persona que ha pedido el pr,stamo no paga la deuda, es posible que usted tenga que pagar la suma total de la deuda, mas los cargos por tardarse en el pago o el costo de cobranza, lo cual aumenta el total de esta suma.

El acreedor (financiero) puede cobrarle a usted sin, primeramente, tratar de cobrarle al deudor. Los mismos metodos de cobranza que puedan usarse contra el deudor, podran usarse contra usted, tales como presentar una demanda en corte, quitar parte de su sueldo, etc. Si alguna vez no se cumple con la obligación de pagar esta deuda, se puede incluir esa información en la historia de credito de usted.

Este aviso no es el contrato mismo en que se le echa a usted la responsibilidad de la deuda.

Rosa V Garcia
Borrower's Signature

78-845 Villeta Dr. LaQuinta, CA 92253
Address

Borrower's Signature

Address

**FOR INFORMATION, CONTACT THE DEPARTMENT OF CORPORATIONS, STATE OF CALIFORNIA**

**MY BILLING RIGHTS - I SHOULD KEEP THIS NOTICE FOR FUTURE USE.**

This notice contains important information about my rights and your responsibilities under the Fair Credit Billing Act.

**I Must Notify You in Case of Errors or Questions About My Bill.**

If I think my bill is wrong, or if I need more information about a transaction on my bill, I must write you on a separate sheet at the address listed on my bill. I must write to you as soon as possible. You must hear from me no later than 60 days after you sent me the first bill on which the error or problem appeared. I can telephone you, but doing so will not preserve my rights.
In my letter, I must give you the following information:
* My name and account number.
* The dollar amount of the suspected error.
* I should describe the error and explain, if I can, why I believe there is an error.
If I need more information, I must describe the item I am not sure about.

**My Rights and Your Responsibilities After You Receive My Written Notice.**

You must acknowledge my letter within 30 days, unless you have corrected the error by then. Within 90 days, you must either correct the error or explain why you believe the bill was correct.

After you receive my letter, you cannot try to collect any amount I question, or report me as delinquent. You can continue to bill me for the amount I question, including finance charges, and you can apply any unpaid amount against my Credit Limit. I do not have to pay any questioned amount while you are investigating, but I am still obligated to pay the parts of my bill that are not in question.

If you find that you made a mistake on my bill, I will not have to pay any finance charges related to any questioned amount. In either case, you will send me a statement of the amount I owe and the date that it is due.

If I fail to pay the amount that you think I owe, you may report me as delinquent. However, if your explanation does not satisfy me and I write to you within ten days telling you that I still refuse to pay, you must tell anyone you report me to that I have a question about my bill. And, you must tell me the name of anyone you reported me to. You must tell anyone you report me to that the matter has been settled between us when it finally is.

If you don't follow these rules, you can't collect the first $50 of the questioned amount, even if my bill was correct.

**Information to identify the case:**

| | | | |
|---|---|---|---|
| Debtor 1 | **Maximiliano Sanchez**<br>First Name Middle Name Last Name | Social Security number or ITIN | **xxx−xx−2857** |
| | | EIN | _ _−_ _ _ _ _ _ _ |
| Debtor 2<br>(Spouse, if filing) | **Rosa Sylvia Garcia**<br>First Name Middle Name Last Name | Social Security number or ITIN | **xxx−xx−2054** |
| | | EIN | _ _−_ _ _ _ _ _ _ |
| United States Bankruptcy Court | **Central District of California** | | |
| Case number: | **6:18−bk−17028−WJ** | | |

## Order of Discharge − Chapter 13

**12/18**

**IT IS ORDERED:** A discharge under 11 U.S.C. § 1328(a) is granted to:

Maximiliano Sanchez
fdba Creations By G6

[include all names used by each debtor, including trade names, within the 8 years prior to the filing of the petition]

Debtor 1 Discharge Date: 8/10/22

**Dated:** 8/10/22

Rosa Sylvia Garcia
aka Rosa Sylvia Garcia−Sanchez, aka Rosa Sylvia Hernandez, aka Rosa Sylvia Sanchez

[include all names used by each debtor, including trade names, within the 8 years prior to the filing of the petition]

Debtor 2 Discharge Date: 8/10/22

**By the court:** Wayne E. Johnson
United States Bankruptcy Judge

### Explanation of Bankruptcy Discharge in a Chapter 13 Case

This order does not close or dismiss the case.

### Creditors cannot collect discharged debts

This order means that no one may make any attempt to collect a discharged debt from the debtors personally. For example, creditors cannot sue, garnish wages, assert a deficiency, or otherwise try to collect from the debtors personally on discharged debts. Creditors cannot contact the debtors by mail, phone, or otherwise in any attempt to collect the debt personally. Creditors who violate this order can be required to pay debtors damages and attorney's fees.

However, a creditor with a lien may enforce a claim against the debtors' property subject to that lien unless the lien was avoided or eliminated. For example, a creditor may have the right to foreclose a home mortgage or repossess an automobile.

This order does not prevent debtors from paying any debt voluntarily. 11 U.S.C. § 524(f).

### Most debts are discharged

Most debts are covered by the discharge, but not all. Generally, a discharge removes the debtors' personal liability for debts provided for by the chapter 13 plan.

In a case involving community property: Special rules protect certain community property owned by the debtor's spouse, even if that spouse did not file a bankruptcy case.

### Some debts are not discharged

Examples of debts that are not discharged are:

- debts that are domestic support obligations;
- debts for most student loans;
- debts for certain types of taxes specified in 11 U.S.C. §§ 507(a)(8)( C), 523(a)(1)(B), or 523(a)(1)(C) to the extent not paid in full under the plan;

92/ET

**For more information, see page 2 >**

**EXHIBIT D (Page 1 of 2)**

- debts that the bankruptcy court has decided or will decide are not discharged in this bankruptcy case;
- debts for restitution, or a criminal fine, included in a sentence on debtor's criminal conviction;
- some debts which the debtors did not properly list;
- debts provided for under 11 U.S.C. § 1322(b)(5) and on which the last payment or other transfer is due after the date on which the final payment under the plan was due;
- debts for certain consumer purchases made after the bankruptcy case was filed if obtaining the trustee's prior approval of incurring the debt was practicable but was not obtained;
- debts for restitution, or damages, awarded in a civil action against the debtor as a result of malicious or willful injury by the debtor that caused personal injury to an individual or the death of an individual; and
- debts for death or personal injury caused by operating a vehicle while intoxicated.

In addition, this discharge does not stop creditors from collecting from anyone else who is also liable on the debt, such as an insurance company or a person who cosigned or guaranteed a loan.

**This information is only a general summary of a chapter 13 discharge; some exceptions exist. Because the law is complicated, you should consult an attorney to determine the exact effect of the discharge in this case.**

**EXHIBIT D (Page 2 of 2)**

RECORDING REQUESTED BY
FIDELITY NATIONAL TITLE
CIT

WHEN RECORDED MAIL TO

Nationwide Title Clearing, Inc.
ATTN: Dusti Woodbury - CIT Unit
2100 Alt 19 North
Palm Harbor, FL 34683

609607024

MIN: 100263105002566807

DOC # 2007-0497808
08/01/2007 08:00A Fee:27.00
Page 1 of 7
Recorded in Official Records
County of Riverside
Larry W. Ward
Assessor, County Clerk & Recorder

| S | R | U | PAGE | SIZE | DA | MISC | LONG | RFD | COPY |
|---|---|---|---|---|---|---|---|---|---|
| 1 | | | 7 | | 1 | | | | |
| M | A | L | 465 | 426 | PCOR | NCOR | SMF | NCHG | EXAM |
| | | | | | T: | | CTY | UNI | 029 |

27

T
029

# DEED OF TRUST

| TRUSTOR(S) Name(s) and Address(es) | ROSA S GARCIA<br>78845 VILLETA DRIVE<br>LA QUINTA, CA 92253 ("Borrower") | Lender Name and Address | The CIT Group/Consumer Finance, Inc. (a Delaware Corporation)<br>800 E COLORADO BLVD PASADENA<br>PASADENA, CA 91101 ("Lender")<br>LICENSE NO.: 603 5184 |
|---|---|---|---|
| | | Beneficiary Name and Address | MERS<br>P.O. Box 2026<br>Flint, MI 48501-2026 ("Beneficiary") |

TRUSTEE'S NAME AND ADDRESS
FIDELITY NATIONAL TITLE, 950 HAMPSHIRE ROAD, WESTLAKE VILLAGE, CA 91361

| LOAN NUMBER | DATE | PRINCIPAL BALANCE | FINAL PAYMENT DATE |
|---|---|---|---|
| 500256680 | 07/25/07 | $50,000.00 | 08/20/32 |

Borrower owes Lender the principal sum shown in the Principal Balance box above, which is the maximum amount of loan indebtedness that Borrower will have outstanding at any time, exclusive of interest thereon. This debt is evidenced by Borrower's Home Equity Line of Credit Agreement dated the same date as this Deed of Trust ("Note"), which provides for monthly payments, with the full debt, if not paid earlier, due and payable on the Final Payment Date shown above. **The beneficiary of this Deed of Trust is MERS** (solely as nominee for Lender and Lender's successors and assigns) and the successors and assigns of MERS. "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. This Deed of Trust secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all renewals, extensions and modifications; (b) the payment of all other sums, with interest, advanced under paragraph 2 to protect the security of this Deed of Trust; and (c) the performance of Borrower's covenants and agreements under this Deed of Trust and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in RIVERSIDE County, California:

**SEE ATTACHED LEGAL DESCRIPTION 'EXHIBIT A'**

which has the address of 78845 VILLETA DRIVE (Street), LA QUINTA (City)
California 92253 (Zip Code) ("Property Address");

Together with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances, rents, royalties, mineral, oil and gas rights and profits, water rights and stock and all fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Deed of Trust. All of the foregoing is referred to in this Deed of Trust as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Deed of Trust, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required to Lender including, but not limited to, releasing and canceling this Deed of Trust.

Borrower covenants that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property. Borrower warrants that the lien created by this Deed of Trust is a valid and enforceable lien subordinate only to easements, liens and restrictions of record as of the date of this Deed of Trust, and that during the entire term of the indebtedness

secured by this Deed of Trust Borrower will not permit this lien to become subordinate to anything else. Borrower warrants and will defend the title to the Property against all claims and demands except such easements, liens and restrictions of record as of the date of this Deed of Trust.

Borrower and Lender covenant and agree as follows:

**1. Payment of Principal and Interest; Prepayment and Late Charges.** Borrower shall promptly pay when due the principal of and interest on the debt evidenced by the Note and any prepayment and late charges due under the Note.

**2 Taxes-Liens-Insurance-Maintenance.** Borrower will pay, when they are due and payable, all taxes, liens or security titles (legal claims), assessments, obligations, water rates and any other charges against the Property, whether superior or inferior to the lien or security title of this Deed of Trust, including paying Lender any costs, including outside attorney's fees incurred by Lender in defending any lawsuit by prior or later lienholders or security title holders on the Property, maintain hazard insurance and earthquake insurance on the Property in Lender's favor in a form and amount satisfactory to Lender and maintain and keep the Property in good repair at all times during the term of this Deed of Trust pursuant to paragraph 4 below. If Borrower fails to maintain the Property in good repair, Lender may enter the Property and make those repairs necessary to maintain the Property in good repair. Lender may pay any such tax, lien or security title, assessment, obligation, water rates, premium or other charge necessary to maintain the Property in good repair, or purchase such insurance in Lender's own name, if Borrower fails to do so. The amount Lender pays will be due and payable to Lender on demand, will bear an interest charge at the interest rate set forth in the Note secured by this Deed of Trust if permitted by law, or, if not, at the highest lawful interest rate, will be an additional lien or security title on the Property and may be enforced and collected in the same manner as the other obligations secured by this Deed of Trust. The insurance carrier providing the insurance referred to above will be chosen by Borrower subject to Lender's approval which will not be unreasonably withheld. All insurance policies and renewals must be acceptable to Lender and must include a standard mortgagee clause. Lender will have the right to hold the policies and renewals. If Lender requires, Borrower will promptly give to Lender all receipts of paid premiums and renewal notices. In the event of a loss, Borrower will give prompt notice to the insurance carrier and Lender. Lender may file a proof of loss if not made promptly by Borrower. Proceeds from all insurance required by Lender or obtained by Borrower will be applied to the restoration or repair of the Property damaged or, at Lender's option, the insurance proceeds will be applied to the sums secured by this Deed of Trust, whether or not then due, with any excess paid to Borrower. If Borrower abandons the Property, or does not answer within ten (10) days, a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may collect the insurance proceeds. Lender may use the proceeds to repair or restore the Property or to pay sums secured by this Deed of Trust, whether or not then due. The ten (10)-day period will begin when the notice is given.

**3. Application of Payments.** Unless applicable law provides otherwise, payments shall be first applied to any prepayment charges, then to any costs and expenses incurred under this Deed of Trust, then to interest then due and then to principal.

**4. Preservation and Maintenance of Property; Leaseholds.** Borrower shall not destroy, damage or substantially change the Property, allow the Property to deteriorate or commit waste. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease, and if Borrower acquires fee title to the Property, the leasehold and fee title shall not merge unless Lender agrees to the merger in writing.

**5. Mortgage Insurance.** If Lender required mortgage insurance as a condition of making the loan secured by this Deed of Trust, Borrower shall pay the premiums required to maintain the insurance in effect until such time as the requirement for the insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

**6. Inspection.** Lender or its agent may make reasonable entries upon and inspections of the Property. Lender shall give Borrower notice at the time of or prior to an inspection specifying reasonable cause for the inspection.

**7. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender.

In the event of a total taking of the Property, the proceeds shall be applied to the sums secured by this Deed of Trust, whether or not then due, with any excess paid to Borrower. In the event of a partial taking of the Property, unless Borrower and Lender otherwise agree in writing, the sums secured by this Deed of Trust shall be reduced by the amount of the proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the taking, divided by (b) the fair market value of the Properly immediately before the taking. Any balance shall be paid to Borrower.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the condemnor offers to make an award or settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the proceeds, at its option, either to restoration or repair of the Property or to the sums secured by this Deed of Trust, whether or not then due.

Unless Lender and Borrower otherwise agree in writing, any application of proceeds to principal shall not extend or postpone the due date of the payments referred to in paragraph 1 or change the amount of such payments.

*GARCIA, ROSA*
*07/25/07 14:48 2054122*
*2-2191B*

*Initial(s)* X RSG X ________

**EXHIBIT E (Page 2 of 7)**

**8. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Deed of Trust granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Deed of Trust by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**9. Successors and Assigns Bound; Joint and Several Liability; Co-signers.** The covenants and agreements of this Deed of Trust shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 15. Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Deed of Trust but does not execute the Note: (a) is co-signing this Deed of Trust only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Deed of Trust; (b) is not personally obligated to pay the sums secured by this Deed of Trust; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Deed of Trust or the Note without that Borrower's consent.

**10. Loan Charges.** If the loan secured by this Deed of Trust is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Note.

**11. Legislation Affecting Lender's Rights.** If enactment or expiration of applicable laws has the effect of rendering any provision of the Note or this Deed of Trust unenforceable according to its terms, Lender, at its option, may require immediate payment in full of all sums secured by this Deed of Trust and may invoke any remedies permitted by paragraph 17.

**12. Notices.** Any notice to Borrower provided for in this Deed of Trust shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. Borrower requests that copies of any notices of default and sale be sent to Borrower's address which is the Property Address unless otherwise indicated on the front page of this Deed of Trust. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any other address Lender designates by notice to Borrower. Any notice provided for in this Deed of Trust shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**13. Governing Law; Severability.** This Deed of Trust shall be governed by California and applicable federal law. In the event that any provision or clause of this Deed of Trust or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Deed of Trust or the Note which can be given effect without the conflicting provision. To this end the provisions of this Deed of Trust and the Note are declared to be severable.

**14. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Deed of Trust.

**15. Transfer of the Property or a Beneficial Interest in Borrower.** If all or any part of the Property or any interest in it is sold or transferred (or if a beneficial interest in Borrower is sold or transferred and Borrower is not a natural person) without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Deed of Trust. However, this option shall not be exercised by Lender if exercise is prohibited by federal law as of the date of this Deed of Trust.

**16. Borrower's Right to Reinstate.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Deed of Trust discontinued at any time prior to the earlier of: (a) 5 days (or such other period as applicable law may specify for reinstatement) before sale of the Property pursuant to any power of sale contained in this Deed of Trust; or (b) entry of a judgment enforcing this Deed of Trust. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Deed of Trust and the Note had no acceleration occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Deed of Trust, including, but not limited to, reasonable attorneys' fees; and (d) takes such action as Lender may reasonably require to assure that the lien or security title of this Deed of Trust, Lender's rights in the Property and Borrower's obligation to pay the sums secured by this Deed of Trust shall continue unchanged. Upon reinstatement by Borrower, this Deed of Trust and the obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under paragraph 15.

**17. Default.** If Borrower defaults in paying any part of the indebtedness secured by this Deed of Trust or if Borrower defaults in any other way, the entire unpaid principal and any accrued and unpaid interest thereon and any other amounts Borrower then owes under the loan secured by this Deed of Trust will become due, if Lender desires.

Lender may execute and record, in the Office of the Recorder of each county in which the Property or some part is located, a written notice of the default and Lender's election to sell the Property secured by this Deed of Trust. Lender may rescind the notice before the Trustee's sale by executing and recording a notice of rescission, which will cancel any prior notice of default and of any acceleration of the maturity of the indebtedness affected by any prior notice of default. Lender's rescission of a notice of default will not waive any existing or subsequent default nor impair Lender's right to execute any notice of default and election to cause the Property to be sold nor otherwise affect any of Lender's rights under this Deed of Trust.

*GARCIA, ROSA*
*07/25/07 14:48 2054122*
*2-2191C*

*Initial(s)* X RAG X ________

**EXHIBIT E (Page 3 of 7)**

After the time required by law following the recording of the notice of default has elapsed, the Trustee may give notice of sale as then required by law and, without demand on Borrower, sell the real estate at the time and place fixed in the notice of sale either as a whole or in separate parcels in whatever order the Trustee determines, at public auction to the highest bidder for cash. The Trustee may postpone the sale from time to time by making a public announcement at the original or previously postponed time and place of sale, and without further notice, the Trustee may make such sale at the time to which the sale may be so postponed.

The Trustee will deliver to the purchaser a Trustee's deed conveying the real estate sold, but without any covenant of warranty, express or implied. Any person, including Lender, Borrower or the Trustee, may bid at the sale and purchase the real estate. The proceeds of the sale will be applied by the Trustee first, to the payment of all fees and expenses of the Trustee and of this trust; second to all sums expended by Lender under the terms of this Deed of Trust which have not been repaid, with accrued interest at the amount allowed by law; third to all other sums secured by this Deed of Trust; and any remainder to the persons legally entitled to it.

**18. Lender in Possession.** Upon acceleration under paragraph 17 or abandonment of the Property, Lender (in person, by agent or by judicially appointed receiver) shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. Any rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Deed of Trust.

**19. Reconveyance.** Upon payment of all sums secured by this Deed of Trust, Lender shall request the Trustee to reconvey the Property and shall surrender this Deed of Trust and all notes evidencing debt secured by this Deed of Trust to the Trustee. Trustee shall reconvey the Property without warranty. The trustee or Lender may charge a fee for services rendered in connection with the preparation, execution or recordation of a reconveyance, or request for a reconveyance, to the extent allowed by law. Such person or persons shall pay any recordation costs.

**20. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Deed of Trust is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by applicable law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**21. Riders to this Deed of Trust.** If one or more riders are executed by Borrower and recorded together with this Deed of Trust, the covenants and agreements of each rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Deed of Trust as if the rider(s) were a part of this Deed of Trust [Check applicable box(s)]

[ ] Adjustable Rate Rider [ ] Condominium Rider [ ] 1-4 Family Rider

[ ] Graduated Payment Rider [ ] Planned Unit Development Rider

[X] Request for Copy of Notice of Default [ ] Other(s) [specify]

**22. Statement of Obligation.** Lender may collect a fee not to exceed the maximum amount permitted by law for furnishing a Beneficiary Statement and/or a Payoff Demand Statement as provided by Section 2943 of the Civil Code of California.

**23. Transfer of Servicing.** Pursuant to California Civil Code Section 2937, if the servicing of this Deed of Trust and the indebtedness by which it secures is ever transferred from one servicing agent to another servicing agent, each such servicing agent shall inform the Borrower of the transfer prior to the creation of any obligation on the part of the Borrower to pay the new servicing agent.

*GARCIA, ROSA*
*07/25/07 14:48 2054122*
*2-2191D*

*Initial(s) X* [initials] *X* ____________

**EXHIBIT E (Page 4 of 7)**

By signing below, Borrower accepts and agrees to the terms and covenants contained in this Deed of Trust and in any rider(s) executed by Borrower and recorded with it.

Rosa S Garcia (Seal)
ROSA S GARCIA -Borrower

_____ (Seal) -Borrower

_____ (Seal) -Borrower

_____ (Seal) -Borrower

STATE OF CALIFORNIA

COUNTY OF LOS ANGELES

On July 25, 2007 before me, Stephanie Deans, Notary Public
(Notary Name and Title)

personally appeared ROSA S GARCIA

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

Signature Stephanie Deans

STEPHANIE DEANS
Commission # 1588712
Notary Public — California
Los Angeles County
My Comm. Expires Jun 20, 2009

(Notarial Seal)

REQUEST FOR RECONVEYANCE

TO TRUSTEE:

The undersigned is the holder of the note or notes secured by this Deed of Trust. Said note or notes, together with all other indebtedness secured by this Deed of Trust, have been paid in full. You are hereby directed to cancel said note or notes and this Deed of Trust, which are delivered hereby, and to reconvey, without warranty, all the estate now held by you under this Deed of Trust to the person or persons legally entitled thereto.

Dated: _____

07/25/07 14:48 2054122
2-2191E

**LEGAL DESCRIPTION**

**EXHIBIT "A"**

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF LA QUINTA, COUNTY OF RIVERSIDE, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

Lot 151, of Tract No. 23269, in the City of La Quinta, County of Riverside, State of California, as per map recorded in Book 205, Pages 86 to 94, inclusive, of Miscellaneous Maps, in the office of the County Recorder of said County.

APN: 604-153-003-0

Government Code 27361.7

I Certify Under Penalty of Perjury That The Notary Seal On The Document To Which This Statement Is Attached Reads As Follows:

Name of Notary: Stephanie Deans

Commission No: 1588712

Date Commission Expires: Jun 20, 2009

County: Los Angeles

By: [signature]

Date: 8-1-07

**EXHIBIT E (Page 7 of 7)**